UNITED STATES COURT OF APPEALS

FOR THE FIFTH CIRCUIT

_____

No. 94-40576
Summary Calendar
_____


UNITED STATES OF AMERICA,

                                   Plaintiff-Appellee,

                    versus

ARNALDO BAKER,

                                   Defendant-Appellant.

_____

Appeal from the United States District Court for the
              Eastern District of Texas
_____

(March 1, 1995)

Before GARWOOD, HIGGINBOTHAM and DAVIS, Circuit Judges.

GARWOOD, Circuit Judge:

     Defendant-appellant Arnaldo Baker (Baker) appeals the district
court's denial of his motion to suppress evidence seized from his
vehicle.  We affirm.

## Facts and Proceedings Below

     On the morning of July 30, 1993, Beaumont police officers
David Froman (Froman) and Gerald LaChance (LaChance) were
patrolling Interstate 10 in Beaumont, Texas.  The officers
positioned their patrol car in the median between the eastbound and
westbound traffic lanes.  At approximately 9:21 a.m., Froman

observed a white Dodge proceeding east on the highway and noticed that the passenger was not wearing a seat belt as required by Texas law. As the officers were pulling the Dodge over to investigate the possible seat belt violation, they noticed another vehicle approaching at a high rate of speed. At this point, LaChance motioned to the second vehicle to pull over as well. Froman approached the driver's side of the Dodge, and La Chance went to speak with the driver of the second vehicle.

Froman asked Baker, the driver of the Dodge, to get out of the car and accompany him to the patrol car. Froman observed that Baker appeared to be extremely nervous. Baker told Froman that he and his wife were returning to Georgia from California, that they had left Los Angeles the previous day at 7:00 a.m., and that they had stayed overnight at a motel on the west side of Houston. Froman considered it unlikely that Baker could have driven such a distance in the time he claimed. Froman then approached the passenger side of the vehicle to obtain Baker's wife's driver's license and to speak with her about the seat belt violation. Froman noticed that Baker's wife also appeared to be extremely nervous. She told Froman that she and her husband had spent two weeks in San Antonio and were returning to Georgia. While he was speaking to Baker's wife, Froman observed a box of .9 millimeter bullets on the left front floorboard of the car. Froman then asked her where the pistol was, and she replied that she did not know. Froman interpreted her response to mean that there was a pistol in the car.

Froman asked Baker's wife to get out of the car so he could

search the front seat area for the pistol. At the suppression hearing, Froman testified that he did this "in the interest of officer safety." As Baker's wife got out of the car, Froman noticed that she had been sitting with her feet on a package that was on the right front floorboard of the car. When he reached down to move the package so that he could look under the front seat, he smelled the odor of marihuana and could see what appeared to him to be a brick of marihuana inside the open-ended package.[1] Froman then signalled to LaChance that he had found narcotics in Baker's vehicle. Approximately three to four minutes had then elapsed from the time the Bakers were initially pulled over for the seat belt violation. The Bakers were then arrested. As he was being patted down for weapons, Baker told LaChance that there was a gun on the back seat of the car. LaChance conducted an inventory search of the car at the narcotics station and found a .9 millimeter pistol and a small additional amount of marihuana.

On September 16, 1993, a federal grand jury returned a three-count indictment against Baker and his wife, charging them with conspiracy to distribute and possess with intent to distribute marihuana in violation of 21 U.S.C. § 846 (Count I), possession of marihuana with intent to distribute in violation of 21 U.S.C. § 841(a)(1) (Count II), and using or carrying a firearm during a drug trafficking crime in violation of 18 U.S.C. § 924(c)(1) (Count III). Baker filed a motion to suppress the evidence seized from his automobile. After the district court denied his motion to

---

[1]     Subsequent laboratory analysis confirmed that this package contained a 5.5 pound brick of marihuana.

3

suppress, Baker entered a conditional guilty plea to Count III, reserving his right to appeal the district court's denial of his motion to suppress. On June 15, 1994, the district court sentenced Baker to 60 months of imprisonment and 3 years of supervised release and imposed a $50 special assessment. Baker filed a timely notice of appeal.

## Discussion

Baker contends that the district court erred in denying his motion to suppress evidence. In reviewing a district court's ruling on a motion to suppress, we review questions of law *de novo*. *United States v. Maldonado*, 735 F.2d 809, 814 (5th Cir. 1984). We consider the evidence in the light most favorable to the prevailing party and accept the district court's factual findings unless clearly erroneous or influenced by an incorrect view of the law. *United States v. Lanford*, 838 F.2d 1351, 1354 (5th Cir. 1988).

Baker argues that the officers searched his vehicle in violation of *Terry v. Ohio*, 88 S.Ct. 1868 (1968). In *Terry*, the Supreme Court held that police officers may detain individuals briefly on the street, even though there is no probable cause to arrest them, as long as they have a reasonable suspicion that criminal activity is afoot. Reasonable suspicion under *Terry* must be based on "specific and articulable facts," and the facts must "be judged against an objective standard." *Id.* at 1880. The Court in *Terry* also held that a police officer who reasonably believes that he is dealing with armed and dangerous individuals may conduct a limited protective search for weapons. *Id.* at 1881. "The officer need not be absolutely certain that the individual is

4

armed; the issue is whether a reasonably prudent man in the circumstances would be warranted in the belief that his safety or that of others was in danger." *Id.* at 1883.

In *Michigan v. Long*, 103 S.Ct. 3469 (1983), the Court applied the principles of *Terry* to automobile searches. In *Long*, two police officers noticed a vehicle driving erratically and at an excessive rate of speed in a rural area late at night. After the officers saw the car swerve into a ditch, they stopped to investigate. Long, the driver, met the officers at the rear of the car and "appeared to be under the influence of something." *Id.* at 3473-74. After the officers repeatedly asked Long for his driver's license and registration, Long began walking toward the open door of his vehicle. The officers followed him and observed a hunting knife on the floorboard of the car. After seeing the knife, the officers subjected Long to a protective pat down, which revealed no weapons. At this point, one of the officers remained with Long at the rear of the vehicle while the other shined his flashlight in the car to look for other weapons. When the officer noticed something protruding from under the armrest, he entered the vehicle and found a pouch containing marihuana. Upholding the validity of the search, the Court held that "the search of the passenger compartment of an automobile, limited to those areas in which a weapon may be placed or hidden, is permissible if the police officer possesses a reasonable belief based on `specific and articulable facts which, taken together with the rational inferences from those facts, reasonably warrant' the officer in believing that the suspect is dangerous and the suspect may gain

5

immediate control of weapons." *Id.* at 3481 (quoting *Terry*, 88 S.Ct. at 1882). *See, e.g., United States v. Coleman*, 969 F.2d 126, 131 (5th Cir. 1992) (upholding protective search of passenger compartment of vehicle on the ground that it was reasonable for the patrol officers to be concerned for their safety); *United States v. Maestas*, 941 F.2d 273, 277 (5th Cir. 1991), *cert. denied*, 112 S.Ct. 909 (1992) (holding that officer had reasonable suspicion to conduct protective search of the passenger compartment of defendant's truck).

Baker does not argue, nor could he, that the initial stop of his vehicle for the seat belt violation was improper. This being so, it was proper for the officers to order him out of the vehicle and to briefly question his wife about the seat belt violation. *See Pennsylvania v. Mimms*, 98 S.Ct. 330, 333 (1977) (holding that it is constitutionally permissible for a police officer to order the driver to get out of the vehicle when done incident to a lawful traffic stop). Instead, Baker argues that the search of his vehicle was unreasonable under *Terry* and *Long* because the officers had no subjective fear that Baker possessed any weapons or was dangerous. In support of his argument, Baker relies on the decisions of two of our sister circuits. *United States v. Lott*, 870 F.2d 778, 783-84 (1st Cir. 1989) ("Although *Terry* and *Long* speak in terms of an objective test (`reasonableness') for determining the validity of an officer's frisk for weapons, we do not read those cases as permitting a frisk where, although the circumstances might pass an objective test, the officers in the field were not *actually* concerned for their safety."); *United*

6

*States v. Prim*, 698 F.2d 972, 975 (9th Cir. 1983) ("Although the existence of reasonable suspicion or probable cause is judicially viewed under an objective standard, it is a standard applied to the actual and/or perceived belief of the law enforcement officer as he either stops and detains or engages in search and seizure."). This Court, however, has never held that an officer's objectively reasonable concern for safety does not justify a protective *Terry* pat down for weapons where the officer has no actual fear for his safety. *See, e.g.*, *United States v. Michelletti*, 13 F.3d 838, 842 (5th Cir. 1994) (en banc) (upholding officer's *Terry* frisk under an objective reasonableness standard, notwithstanding his testimony on cross-examination at the suppression hearing that he had no specific reason to believe that the defendant was armed); *United States v. Tharpe*, 536 F.2d 1098, 1101 (5th Cir. 1976) (en banc) ("We know of no legal requirement that a policeman must feel `scared' by the threat of danger."). *See also United States v. Cummins*, 920 F.2d 498, 502 (8th Cir. 1990), *cert. denied*, 112 S.Ct. 429 (1991) ("As we apply an objective standard of reasonableness to this determination, our conclusion is not changed by [the officer's] testimony that he had no subjective fear that either Cummins or Akins were armed."). In *Michelletti*, we took note of the officer's testimony that he had no specific reason to believe that the defendant was armed but went on to find that several other factors surrounding the encounter satisfied the reasonable suspicion standard. In the instant case, there was no testimony that Froman and LaChance did not suspect that weapons were concealed in Baker's vehicle. In fact, Froman testified at the

7

suppression hearing that he searched the car "in the interest of officer safety." Further, the district court, in its oral ruling on the motion to suppress, credited Froman's testimony that he interpreted Baker's wife's comment to mean that there was a gun in the car. We thus accept the district court's finding that the officers searched Baker's car because they suspected that it contained weapons.

*United States v. Richards*, 967 F.2d 1189, 1193 (8th Cir. 1992) involved facts similar to those of the instant case. There, a police officer observed the defendant, Richards, driving erratically and pulled him over to investigate. After asking Richards to accompany him to the patrol car, the officer noticed that he appeared very nervous. Richards explained that he had recently been released from prison after serving time for burglary. Another officer approached the car to question Richards's passenger. As he approached the passenger, the officer noticed a box of .22 caliber shells on the console inside Richards's car. After seeing the shells, the officer searched the passenger compartment of the vehicle for weapons and found a small amount of marihuana. The officers arrested both Richards and his passenger, then searched the trunk of his car and found, *inter alia*, additional amounts of marihuana and two loaded handguns.

On appeal, Richards argued that the district court should have suppressed the evidence seized from his car because the warrantless search was unreasonable. Upholding the validity of the search under *Michigan v. Long*, the Eighth Circuit relied on Richards's nervousness, the .22 caliber shells in the car, and Richards's

8

statement that he was a recently released felon. *Id.* at 93. *See also United States v. Fryer*, 974 F.2d 813, 819 (7th Cir. 1992), *cert. denied*, 113 S.Ct. 2419 (1993) (holding that late night search of automobile for weapons after traffic stop in marginally safe neighborhood was reasonable based on furtive movements between the driver and passenger); *United States v. Coleman*, 969 F.2d 126, 131 (5th Cir. 1992) (finding that officer's search of passenger compartment of defendant's car for weapons was reasonable where defendant appeared nervous, officer knew the stop was part of a narcotics investigation, and defendant started to retrieve pouch in his car which he claimed contained his license).

We have recognized that "[e]ach case involving the reasonableness of a *Terry* stop and frisk turns on its own facts." *Michelletti*, 13 F.3d at 844. Several facts in the instant case demonstrate that the officers' search of the passenger compartment of Baker's car was reasonable under *Terry* and *Long*. First, Froman testified that Baker and his wife both appeared extremely nervous and gave inconsistent explanations for their trip. Second, Froman noticed a box of .9 millimeter bullets on the front floorboard of Baker's car. Finally, when Froman asked Baker's wife where the gun was, she stated that she did not know, a remark Froman interpreted to mean that there was a gun in the car. Based on these facts known to the officers at the time of the search, we hold that their conduct in searching the passenger compartment of Baker's vehicle for weapons was reasonable under the objective standard of *Terry* and *Long*.

## Conclusion

For the foregoing reasons, Baker's conviction is

AFFIRMED.