# UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

---

No. 98-51189

---

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

versus

SOFIA CASTANON ENRIQUEZ-DeROMERO,

Defendant-Appellant.

---

Appeal from the United States District Court
for the Western District of Texas
(EP-98-CR-0733-2-DB)

---

December 14, 1999

Before POLITZ, GARWOOD, and DAVIS, Circuit Judges.

PER CURIAM:[*]

Sofia Castanon Enriquez-DeRomero, convicted by a jury of conspiracy to possess a quantity of cocaine with intent to distribute, and sentenced to 121 months imprisonment, five years supervised release, and a $100 special assessment, timely appeals.

## BACKGROUND

On May 27, 1998, Officer Johnny Paniagua received one kilogram of cocaine from Mario Ramirez and agreed to purchase five additional kilograms the next day. On May 28, 1998, various law enforcement officers were engaged in an undercover

---

[*]Pursuant to 5TH CIR. R. 47.5, the Court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

narcotics transaction involving the purchase of cocaine from Ramirez and Ernesto Rodriguez. Paniagua gave Ramirez and Rodriguez $15,000 in a white pastry box as payment for the cocaine he had bought the previous day. The two men told Paniagua that they would call him was soon as the additional five kilograms of cocaine came into the United States.

Agents then began conducting surveillance of a Chevrolet van driven by Rodriguez and Ramirez. At about 5 p.m., Rodriguez, Ramirez, and Tomas Martinez arrived at a Peter Piper Pizza Restaurant in the van. The van was observed leaving the restaurant and driving to a 7-11 store, where one individual exited the van and used a pay telephone. The van then returned to the Peter Piper restaurant. Approximately 15-20 minutes later, a Mercury Marquis arrived at the parking lot and parked perpendicular to the van. Someone from the van walked over to the Marquis. Four women then got out of the Marquis and entered the restaurant. The Marquis drove around the parking lot and parked two spaces away from the van. Three of the women exited the restaurant and got into the Marquis. The fourth woman, later identified as Enriquez-DeRomero, walked to the Marquis, retrieved a white pastry box, and then got into the van. She then exited the van without the box, retrieved a dark bag from the Marquis, and made an exchange of some sort near the van. Both vehicles then left the parking lot.

As the vehicles left, DEA Agent Jill Ceren received a call in which Paniagua informed her that the occupants of the van told him they had five kilograms of cocaine and were on their way to McDonald's. Agent Ceren radioed the El Paso

2

Police Department and asked Officer Fred Arias to stop the Marquis. Officer Arias was present when two El Paso Police Department gang task force unit officers stopped the vehicle.

The driver, the front seat passenger, and the four female back seat passengers were asked to exit the vehicle. The driver showed the officers a resident alien card as identification and consented to a search of the vehicle. Officer Lawrence Lujan took the purses belonging to the four female passengers, placed them on the trunk of the vehicle, and asked the women to stand next to the interstate's guardrail. He stated that he wanted to make sure that the purses did not contain any weapons, but testified at the suppression hearing that he intended to retrieve identification of the women in the car. He then asked each woman for identification; each one responded that her identification was in her purse. Officer Lujan took each purse, performed a "pat-down" for weapons, and then opened it to obtain its owner's identification. Enriquez-DeRomero's purse was the last to be checked. Officer Lujan stated that he picked up the purse, intending to pat it down for weapons, but "it fell to the ground because it had something heavy in it." When the purse hit the ground, two large bricks wrapped in black wrapping fell out of it. Officer Lujan stated that based on his experience, he believed the two bricks contained cocaine. They did.

The district court denied Enriquez-DeRomero's motion to suppress the cocaine. The judge determined that the facts established reasonable suspicion of criminal activity to justify the stop of the Marquis. The court also found that the

3

search of the inside of the purses was a blatant and troubling violation of the women's constitutional rights. Judge Briones concluded, however, that the cocaine came into Officer Lujan's plain view before he searched Enriquez-DeRomero's purse and was therefore admissible.

## ANALYSIS

Enriquez-DeRomero does not challenge the stop of the Marquis, the officers' command that she exit the vehicle, or the seizure or pat down of her purse. Her only contention on appeal is that the district court should have suppressed the cocaine evidence because it was found during an unconstitutional search of her purse. In reviewing a district court's ruling on a motion to suppress, we accept the district court's findings of fact absent clear error, and review questions of law *de novo*.[1]

Enriquez-DeRomero contends that under **Arizona v. Hicks**,[2] officer Lujan engaged in a search of her purse the moment he moved it from the trunk of the Marquis. In **Hicks**, the Supreme Court decided that law enforcement officers who were engaged in a lawful search of an apartment for evidence of a shooting conducted a search "separate and apart" from the initial search when they moved a stereo set in order to obtain its serial number. The Court found an additional search despite the fact that the stereo set was in plain view of the officers, and pointedly required independent probable cause to justify the search.

---

[1]**United States v. Baker**, 47 F.3d 691 (5th Cir. 1995).

[2]480 U.S. 321 (1987).

**Hicks** lends little support to Enriquez-DeRomero's position. **Hicks** determined that an object may be the subject of a search even if the object itself is in the plain view of the officers. In **Hicks**, the "additional search" was found to exist because the officers took action "unrelated to the objectives of the authorized intrusion."[3] The actions taken with regard to Enriquez-DeRomero's purse by Officer Lujan, on the other hand, were all related to a pat-down of the purse for weapons authorized by **Minnesota v. Dickerson**.[4] Indeed, this case falls in that "middle category [of cases] which **Hicks** does not specifically address" that we identified in **Crowder v. Sinyard**.[5] We find its reasoning persuasive. In **Crowder** we considered whether an "additional search" exists under **Hicks** when, in carrying out an authorized search, officers move, touch, or disturb items unrelated to that search. We examined a hypothetical case in which a silver tray which is the subject of a lawful search might be found in a drawer but under items unrelated to the search, such as a watch. If in removing the tray from the drawer an officer disturbs the watch in a way that reveals a distinguishing characteristic that forms the basis of probable cause to believe the watch is stolen, then the plain view doctrine permits the officer to seize the watch. Similarly, while conducting a lawful pat-down of Enriquez-DeRomero's purse, Office Lujan disturbed the contents of the purse in a way that revealed evidence forming the basis of probable cause to

---

[3]**Hicks**, 480 U.S. at 325.

[4]508 U.S. 366 (1993).

[5]884 F.2d 804 (5th Cir. 1989).

believe Enriquez-DeRomero was carrying contraband. The plain view doctrine permitted him to seize that contraband. Though his intent to perform an unconstitutional search of Enriquez-DeRomero's purse was clear, Officer Lujan had not yet done so at the moment that the purse fell and the cocaine therein was exposed to the officer's plain view. Based on this factual scenario, the court properly denied the motion to suppress.

For the reasons assigned, Enriquez-DeRomero's conviction is AFFIRMED.