REVISED NOVEMBER 13, 2002

**UNITED STATES COURT OF APPEALS**

**FOR THE FIFTH CIRCUIT**

No. 01-10967

JEFFREY L. ESTEP,

                    Plaintiff - Appellant,

VERSUS

DALLAS COUNTY, TEXAS, ET. AL.,

                    Defendants

WILLIAM F. PEACE, CONLEY, OFFICER; J.C. QUILLEN,

                    Defendants - Appellees

Appeal from the United States District Court
For the Northern District of Texas, Dallas Division

October 18, 2002

Before KING, Chief Judge, PARKER, Circuit Judge, and Ellison[*],

---

[*]District Judge of the Southern District of Texas, sitting by designation.

1

District Judge.

PER CURIAM:

For the second time, Jeffrey L. Estep ("Estep") appeals from the district court's grant of summary judgment in favor of defendants William Peace, Officer Conley and J.C. Quillen. As was the case during the initial appeal, the issue before us is whether the district court properly granted summary judgment to the defendants on qualified immunity grounds. For the following reasons, we REVERSE IN PART and AFFIRM IN PART.

## I.   PROCEDURAL HISTORY

This case has an unusual procedural history to say the least. In 1995, Estep filed this Section 1983 action against the defendants-appellees for violating his right to be free from an unreasonable search of his vehicle under the Fourth Amendment to the United States Constitution. Estep alleged that the defendants-appellees, three City of Garland, Texas police officers, conducted an unlawful search of his vehicle after a routine traffic stop on March 29, 1993.[1]  In October 1997, the district court granted

---

[1]  During the course of the search, the police discovered a pistol. Estep was placed under arrest for wrongfully carrying a weapon. Prior to his trial in Dallas County, Estep moved to suppress the pistol because the search had been conducted in violation of the Constitution. On September 7, 1993, Judge Molly Francis conducted a suppression hearing. After hearing testimony, Judge Francis ruled that the search was unconstitutional and suppressed all evidence obtained subsequent to the arrest. The

summary judgment to Officer Peace, Officer Quillen, and Officer Conley on qualified immunity grounds. Estep appealed to our court.

On August 28, 1998, a separate panel issued an unpublished, per curiam opinion which remanded the case back to the district court to reconsider the defendants' summary judgment motion in the light of competent summary judgment evidence submitted by Estep. The panel informed the district court that in making its second ruling it should address whether the search was lawful and whether such lawfulness is actionable under Section 1983 when all factual inferences are made in favor of Estep.

On remand, the district court granted summary judgment to Officer Conley, but denied summary judgment in favor of Officer Peace and Officer Quillen because the record was insufficient to determine whether Peace and Quillen were entitled to qualified immunity. Not satisfied with this ruling, however, the officers submitted new summary judgment motions without any additional evidence. Estep failed to respond to the officers' new summary judgment motions.

In June 2001, the district court changed its mind and granted summary judgment in favor of Officer Peace and Officer Quillen. Unfortunately, in making its ruling, the district court failed to

_____

state of Texas thereafter dismissed its criminal case against Estep.

3

address the issues that the previous panel instructed it to resolve. Specifically, the court failed to consider all the competent summary judgment evidence and never determined whether the search of Estep's vehicle was lawful. In July 2001, Estep once again appealed to our court to contest the grant of summary judgment.

Estep's current appeal is now properly before us. At this point (seven years after the complaint was filed and nine years after the incident occurred ), it is time to conclusively resolve whether Officer Peace and Officer Quillen are entitled to summary judgment. While it would have been preferable for the district court to have initially determined the lawfulness of the search, it did not. Therefore, we will undertake this task.

## II. THE FACTS

Viewing the competent summary judgment evidence in the light most favorable to Estep, the following occurred on March 29, 1993. Estep was traveling in a 1988 Ford pick-up truck on Highway 66 near Rowlett, Texas when he was pulled over by Officer Peace for going 47 mph in a 35 mph speed zone.[2] After stopping his truck on the

---

[2] During the course of pre-trial proceedings, Estep submitted a verified response to a magistrate judge's interrogatory contesting that he had been speeding. However, the previous panel noted that Estep had abandoned that argument during his initial appeal. Thus, our analysis of this case proceeds on the determination that Officer Peace properly stopped Estep for a

4

side of the road, Estep exited his vehicle with driver's license and proof of insurance in hand to give to Officer Peace. As Estep stood by his truck, Officer Peace approached and initiated the first words. Officer Peace asked "Do you have a gun in the car?" Estep hesitated a second and said "No. Why do you ask?" Estep then asked Officer Peace why he had been stopped. Officer Peace did not answer Estep's question, but asked again "Do you have a gun in this vehicle?" Estep said "No" but then told Officer Peace that he had mace on his key chain. Estep then took his keys from the ignition, showed Peace the mace, and asked Peace if he considered mace a weapon. Peace said no, but again told Estep that he better tell him if he had a gun in the vehicle. Estep then said he did not have a gun and asked again why he had been stopped.

At that point, Officer Peace asked for Estep's license and insurance registration and told Estep to stay in the vehicle. Officer Peace then called for backup.[3] Subsequently, Officer

_____

speeding violation.

[3] In Peace's affidvait, he states that he called for backup because he believed that Estep had a weapon and was worried that Estep would use the weapon. Peace stated that he feared he was in danger because (1) Estep's vehicle contained an NRA sticker, camoflauge material, and hunting equipment inside it; (2) Estep had waved the mace at him; (3) Estep had not answered his questions; and (4) Estep claimed his constitutional rights were being violated. However, Estep denies that he had hunting equipment inside his car, claims that he merely showed Officer Peace the can of mace, and asserts that he did not inform Peace that his

5

Quillen and Conley arrived on the scene. Officer Peace told Quillen that he felt there was a weapon in the vehicle. However, Peace did not explain to Quillen why he felt there was a weapon in the vehicle or why he felt the situation was dangerous. He just told Quillen that Estep had denied having a pistol, but that something about the situation made him nervous.

Thereafter, Officer Peace summoned Estep from his vehicle and they proceeded to the back of Estep's truck. Officer Peace informed Estep that he had been stopped for speeding. While Estep signed the citation, Quillen began to search the inside of Estep's vehicle even though Estep protested that the search violated his constitutional rights. During the search, Quillen looked under the back seat of the truck and found a case. He opened the case and discovered the pistol.

Officer Peace subsequently placed Estep under arrest and took Estep to the police car. While sitting in the police vehicle, Peace admitted to Quillen (in Estep's presence) that the NRA sticker was what tipped him off to the weapon in the vehicle.

## III. JURISDICTION AND STANDARD OF REVIEW

We have jurisdiction under 28 U.S.C. § 1291 because Estep appeals from a final decision of the district court. We review the

---

constitutional rights were being violated until the search of his vehicle commenced.

6

district court's grant of summary judgment de novo, applying the same substantive standard set forth in Fed.R.Civ.P. 56(c). *See Horton v. City of Houston*, 179 F.3d 188, 191,(5th Cir. 1999), *cert. denied*, 528 U.S. 1021 (1999).

**IV.   ANALYSIS**

**A.   Fourth Amendment Violation**

The Supreme Court reiterated last term in *Saucier v. Katz*, 533 U.S. 194, 201 (2001) that the threshold question to be answered when ruling upon the qualified immunity issue is: "[t]aken in the light most favorable to the party asserting the injury, do the facts alleged show the officer's conduct violated a constitutional right."  Thus, as a threshold matter, we must decide whether the alleged facts, viewed in the light most favorable to Estep, show that Estep's constitutional rights were violated.

The constitutional right at stake in this case is Estep's right to be free from an unreasonable search of his vehicle. The constitutional principle applicable to this case is found in *Michigan v. Long*, 463 U.S. 1032 (1983).  In *Long*, the Supreme Court held that a warrantless search of the passenger compartment of a vehicle does not violate the Fourth Amendment if the search is conducted to protect the officer's safety.  Specifically, the *Long* court stated that the:

> search  of  the  passenger  compartment  of  an

7

> automobile, limited to those areas in which a weapon may be placed or hidden, is permissible if the police officer possesses a reasonable belief based on specific and articulable facts, which taken together with rationale inferences from those facts, reasonably warrant the officer in believing that the suspect is dangerous and the suspect may gain immediate control of the weapon. *Id.* at 1049.

Thus, for purposes of determining whether the Fourth Amendment was violated, the question is: was it reasonable for Officer Peace to think Estep was dangerous and might gain immediate control of a weapon based upon (1) Estep's vehicle containing an NRA sticker; (2) Estep's vehicle containing camoflauge gear; (3) Estep showing Peace that he had a key chain which contained mace; (4) Estep getting out of the car to hand Peace his identification; and (5) Estep's manner in answering Peace's questions?

The answer to that question is no for several reasons. The presence of the NRA sticker in the vehicle should not have raised the inference that Estep was dangerous and that he might gain immediate control of a weapon. Regardless of whether there is some correlation between the display of an NRA sticker and gun possession, placing an NRA sticker in one's vehicle is certainly legal and constitutes expression which is protected by the First Amendment. A police officer's inference that danger is afoot because a citizen displays an NRA sticker in his vehicle presents disturbing First and Fourth Amendment implications. *See United*

8

*States v. Ramon*, 86 F. Supp. 2d 665, 677 (W.D. Tex. 2000) (holding that in the absence of other sufficiently strong factors supporting a stop, reliance upon the vehicular display of religious decals and symbols as indicative of criminal activity likely violates the First and Fourth Amendments). Although we do not definitively decide today whether the presence of an NRA sticker could ever contribute to a "reasonable suspicion" of danger calculus, we do find that Peace's utilization of the NRA sticker in his "reasonable suspicion" of danger calculus was unwarranted when viewing the facts in the light most favorable to Estep.

The only remaining factors alleged to indicate that Estep posed a danger to Officer Peace is that Estep had a camoflauge jacket in his vehicle, Estep stepped out of his vehicle to greet Peace, Estep possessed a key chain with mace, and Estep was not cooperative in answering Peace's questions. We address each alleged factor which remains in turn.

First, as far as we know, there is no law which prevents a citizen from carrying a camoflauge jacket, carrying a key chain with mace, or displaying an NRA sticker in his vehicle. Indeed, if the presence of an NRA sticker and camoflauge gear in a vehicle could be used by an officer to conclude he was in danger, half the pickups in the state of Texas would be subject to a vehicle search. Second, Estep's decision to get out of his vehicle to greet Peace

9

and hand Peace his identification does not create the type of individualized suspicion needed for an officer to conclude he is in danger. *See United States v. Hunt*, 253 F.3d 227, 232 (5th Cir. 2001) ("[a]n individual's decision to step out of his or her vehicle to greet a detaining officer does not create the individualized suspicion required for an automobile search"). Third, we cannot accept the notion that mere possession of a key chain with mace indicated that Estep posed a danger to Peace.[4] Finally, Estep's alleged uncooperativeness could not justify the vehicle search because, viewed in the light most favorable to Estep, it appears as though Peace, not Estep, was the individual being uncooperative in the situation.[5] Under Estep's version of the events, he cooperated until the search of his vehicle commenced.

We realize that officers are called upon to make split-second judgments in oftentimes tense situations. Moreover, we recognize that the officer in the field is in a much better position than a judge in his office to determine whether a situation truly places the officer in danger. *See Graham v. Connor*, 490 U.S. 386, 397

---

[4] Although Peace avers that Estep "waved" the mace at him, Esteps avers that he only "showed" Peace that he had a key chain with mace.

[5] Peace would not tell Estep why he was being stopped.

10

(1989)(noting that because police officers are often forced to make split-second judgments in tense situations the reasonableness of the officer's conduct should be judged from an on-scene perspective). However, the contention that a search must be done to protect a police officer must have some reasonable basis in fact. We cannot rubber-stamp a search of a vehicle based on an officer's mere inchoate and unparticularized "hunch" that a citizen poses an immediate threat of danger.[6] *See Maryland v. Buie*, 494 U.S. 325, 332, 334 n.2 (1990).

Here, viewing the facts in the light most favorable to Estep, there were no specific articulable facts from which Officer Peace could have lawfully concluded that he was in danger. The contention that a citizen poses an immediate danger because he possesses a key chain containing mace, camoflauge gear, an NRA sticker, and does not answer questions in exactly the manner the

---

[6] In the past, we have upheld warrantless searches of people and vehicles based upon the contention that the officer feared for his safety. *See United States v. Maestas*, 941 F.2d 273, 275 & 277 (5th Cir. 1991); *United States v. Colin*, 928 F.2d 676, 677 (5th Cir. 1991); *United States v. Coleman*, 969 F.2d 126, 131 (5th Cir. 1992); *United States v. Baker*, 47 F.3d 691, 693-95 (5th Cir. 1995); *United States v. Michelletti*, 13 F.3d 838, 842 (5th Cir. 1994). However, those cases involved a much greater degree of suspicious behavior than the instant case. In the cited cases, the individuals in question aroused suspicion because they were either intoxicated, already suspects of violent crimes, had made threatening statements, or had in plain view some evidence of a concealed weapon.

11

officer desires is not suspicious enough behavior to justify a *Long* "frisk" of a vehicle. Thus, the search violated the Fourth Amendment.[7]

**B.  Was the constitutional right clearly established?**

Our determination that the Fourth Amendment has been violated does not end our analysis, however. In some circumstances, an officer will be entitled to summary judgment on qualified immunity grounds even though the officer violated the citizen's Fourth Amendment rights. *See Bigford v. Taylor*, 896 F.2d 972, 975 (5th Cir. 1990) ("the analysis of whether a warrantless search was reasonable is not the equivalent of whether an officer participating in an unreasonable search is entitled to qualified immunity"). Consequently, the next step in our analysis is to ask whether the contours of the constitutional right in question were sufficiently clear that a reasonable officer would understand that what he is doing violates that right. *See Saucier*, 533 U.S. at 202 ("[t]he relevant, dispositive inquiry in determining whether a right is clearly established is whether it would be clear to a

---

[7] We also note that Officer Peace's contention that he was truly in fear for his safety is belied by the fact that he never searched Estep's person for weapons. Moreover, assuming arguendo that Peace and Quillen did truly fear for their safety, the extension of the search to include closed containers located beneath the seat exceeded what would have been necessary to protect them from danger upon Estep's reentry into the vehicle.

reasonable officer that his conduct was unlawful in the situation he confronted"); *Pierce v. Smith*, 117 F.3d 866, 882 (5th Cir. 1997)("For qualified immunity to be surrendered, pre-existing law must dictate, that is, truly compel (not just suggest or allow a question about), the conclusion for every like-situated, reasonable government agent that what the defendant is doing violates federal law *in the circumstances*")(quoting from *Lassiter v. Alabama A & M University*, 28 F.3d 1146, 1150 (11th Cir. 1994).

Although we have stated that the constitutional right at stake is Estep's right to be free from a vehicle search unless an officer has a reasonable belief that he is in danger, we must further evaluate whether the contours of that right were "clearly established" in a more particularized way. *Saucier*, 533 U.S. at 202. As applied to this case, we must consider whether it is clearly established law that a reasonable officer could not conclude that he was in danger when faced with a citizen who exited the car prior to the approach of the officer, continuously asked why he had been stopped, showed the officer a key chain with mace, possessed camoflauge gear, and possessed an NRA sticker?

There is no Fifth Circuit case which directly addresses whether a reasonable officer could conclude, based on these specific facts, that a citizen posed a danger and could gain

13

immediate control of a weapon.[8]  However, there does not have to be a case directly on point for the law to be "clearly established." *See Petta v. Rivera*, 143 F.3d 895, 899 (5th Cir. 1998)(noting that it is not necessary that prior cases have held the particular action in question unlawful so long as the unlawfulness of the action is apparent under pre-existing law).  Our cases make clear that a *Long* "frisk" of a vehicle is only constitutional if there are specific, articulable facts from which a reasonable police officer could believe he was in danger.  In our view, the constitutional violation in this case is clear-cut and obvious.  No reasonable police officer could have really believed that a search was constitutional under the circumstances presented.

## C.    Entitlement to Qualified Immunity on Other Grounds

## 1.    Officer Peace

The defendants argue that even if (1) the search was unlawful and (2) no reasonable police officer could have believed a search to be lawful, Officer Peace is entitled to qualified immunity because he was not personally involved in the search.  The district court accepted this argument.  We reject it.

---

[8] Although no Fifth Circuit case addresses these exact facts, we reiterate that our *Hunt* decision clearly states that "[a]n individual's decision to step out of his or her vehicle to greet a detaining officer does not create the individualized suspicion required for an automobile search."  *Hunt*, 253 F.3d at 232.

14

The district court's determination that Officer Peace was not involved in the search relied upon *Creamer v. Porter*, 754 F.2d 1311 (5th Cir. 1985)(affirming dismissal from suit of a deputy who was only a bystander to a search and seizure) and *Watson v. Interstate Fire and Casualty Co.*, 611 F.2d 120 (5th Cir. 1980)(holding that a sheriff without any personal involvement was properly dismissed from a § 1983 suit arising from an arrest and incarceration). However, those cases are inapposite. At the time of the incident, Officer Peace had 25 years of police experience. More importantly, he was the officer on the scene who had the information from which to determine whether Estep truly posed a danger. As such, he was responsible for deciding whether the search could be conducted lawfully or not. While the record does not show that Officer Peace directly ordered Quillen to search the vehicle, it is clear that Peace knew the search was transpiring (indeed, assuming arguendo that Peace did not know Quillen was going to search the vehicle prior to Quillen commencing the search, Estep informed him of that fact the moment the search began). As we see it, Peace decided to allow the search to go forward. Therefore, he is not entitled to summary judgment on qualified immunity grounds.

## 2. Officer Quillen

With respect to Officer Quillen, the defendants contend that even if (1) the search was unlawful and (2) no reasonable police

15

officer could have believed a search to be lawful, Officer Quillen is entitled to qualified immunity because he reasonably relied upon Officer Peace's conclusion that the officers were in danger. We also reject this argument.

An officer can conduct a *Long* "frisk" of a vehicle based on information possessed by another officer. However, it is not reasonable for an officer to conclude that it is lawful to make such a search when his fellow officer does not provide him with any specific articulable facts from which a reasonable officer could think he was in danger. In the instant case, Peace told Quillen that he thought they were in danger, but he did not tell Quillen of any specific facts which would support that opinion. From the record evidence, the most we can say is that Peace told Quillen that (1) Estep had denied having a pistol; and (2) Estep had some mace. Based upon such flimsy evidence, it was unreasonable for Quillen to also conclude that they were in danger and that a search could be lawfully conducted. Thus, Quillen is not entitled to qualified immunity.

**3. Officer Conley**

The evidence indicates that Officer Conley truly was a bystander in this matter. Thus, we affirm the grant of summary judgment to Officer Conley.

**V. CONCLUSION**

16

Viewing the evidence in the light most favorable to Estep, this is not a case where a reasonable officer could conclude he was in danger. It is a case where an officer targeted a citizen and allowed a vehicle search because the citizen had an NRA sticker in his vehicle. For the aforementioned reasons, we reverse the grants of summary judgment to Officer Peace and Officer Quillen on qualified immunity grounds. We affirm the grant of summary judgment to Officer Conley. This case is remanded back to the district court for a trial.[9]

---

[9] The motion filed by Estep requesting the appointment of counsel is hereby denied for lack of exceptional circumstances. *See Cupit v. Jones*, 835 F.2d 82, 86 (5th Cir. 1987).

KING, Chief Judge, concurring in part and dissenting in part:

In my view, the police officers in this case reasonably suspected that Jeffrey Estep's vehicle contained a weapon. They therefore did not violate Estep's Fourth Amendment rights in searching his vehicle. Further, even if there were a Fourth Amendment violation, these officers are entitled to qualified immunity because reasonable officers in their positions would not have thought the search was clearly illegal. I therefore dissent from the panel's decision reversing summary judgment in favor of Officers Peace and Quillen. I concur in the decision affirming summary judgment in favor of Officer Conley.

## I. FACTS

Because this case comes to our court on the defendants' motion for summary judgment, we review the record in the light most favorable to Estep. Taking the undisputed facts and the disputed facts as Estep has alleged them, on March 29, 1993, Officer William Peace was monitoring traffic from his squad car using a radar unit when he noticed Estep was speeding. Officer Peace stopped Estep and got out of his squad car to request identification and proof of insurance. As Officer Peace approached Estep's truck, he noticed camouflage material and what

18

he believed was hunting gear in the back of the truck. Peace also noticed a National Rifle Association ("NRA") sticker on the truck's back window.

Before Officer Peace reached the driver's side of the truck, Estep exited the truck. Estep asserts that he "greeted [Officer Peace] with respect" and was totally cooperative. Officer Peace asked Estep if he had a weapon in the vehicle; Estep responded that he did not and asked why he had been stopped. Officer Peace again asked if there was a weapon in the truck; Estep dangled his key chain in front of Officer Peace and asked if the mace attached to his key chain was a weapon. At that point, Officer Peace became concerned for his own safety, so he returned to his patrol car and called for backup while Estep sat in his truck.

Officers J.C. Quillen and G.A. Conley arrived on the scene. Officer Peace told them that he was nervous because he thought Estep had a weapon in his truck. Officer Peace then had Estep exit the truck. Officer Peace wrote Estep a citation for speeding while Officer Quillen searched Estep's truck for a weapon. While Officer Quillen searched the vehicle, Estep complained that the officers were violating his constitutional rights, particularly his constitutional right to carry a firearm. Officer Quillen found a pistol in a case under the driver's side seat, and Estep was arrested for unlawfully carrying a weapon.

19

## II. DISCUSSION

We utilize a familiar two-part test for determining whether a public official is entitled to qualified immunity. First, we determine if the plaintiff's constitutional rights were violated. Saucier v. Katz, 533 U.S. 194, 201 (2001). If the facts viewed in the light most favorable to the plaintiff do not show a constitutional violation, the officer is entitled to qualified immunity. Id. Second, if a violation occurred, we consider whether the rights violated were clearly established at the time of the violation. Id. If the officer violated a clearly established right, he is stripped of qualified immunity. Id. at 201-02.

A. Crediting Estep's Version of the Events, Was the Fourth Amendment Violated?

The threshold question, then, is whether the facts viewed in the light most favorable to Estep show that the officers violated Estep's constitutional rights.

It is well-settled that a police officer may conduct a protective search of a vehicle based on a reasonable suspicion that there is a weapon in the vehicle. See Michigan v. Long, 463 U.S. 1032, 1049 (1983). Reasonable suspicion is a belief "based on 'specific and articulable facts which, taken together with the rational inferences from those facts'" indicate that "the suspect

20

is dangerous and the suspect may gain immediate control of weapons." Id. (quoting Terry v. Ohio, 392 U.S. 1, 21 (1968)). An officer's suspicion is judged using an objective standard: "the issue is whether a reasonably prudent man in the circumstances would be warranted in the belief that his safety or that of others was in danger." Terry, 392 U.S. at 27.

Reasonable suspicion requires only a minimum level of objective justification, just "more than a hunch." United States v. Michelletti, 13 F.3d 838, 840 (5th Cir. 1994) (en banc). As we have noted, reasonable suspicion "is considerably easier for the government to establish than probable cause." United States v. Tellez, 11 F.3d 530, 532 (5th Cir. 1993). Finally, whether reasonable suspicion existed is judged on the totality of the circumstances. See United States v. Ibarra-Sanchez, 199 F.3d 753, 759 n.5 (5th Cir. 1999).

Even viewing the facts in the light most favorable to Estep, Officers Peace, Quillen, and Conley have articulated sufficient facts to support their suspicion that Estep's truck contained a weapon. As Officer Peace approached the truck, he saw indicia of gun ownership.[10] See, e.g., United States v. Baker, 47 F.3d 691,

---

[10] Without deciding the issue, the majority finds "disturbing First and Fourth Amendment implications" in the officer's reliance on, inter alia, an NRA sticker as a basis for his decision to search the vehicle. The question that the officer was faced with was whether Estep presented a danger because he possessed a weapon and, with respect, throwing an NRA sticker into the calculus (along with other factors) does not seem to me to affront the First Amendment.

21

694-95 (5th Cir. 1995) (finding that an officer's viewing .9 millimeter bullets on the floor of a suspect's vehicle supported reasonable suspicion); see also United States v. Richards, 967 F.2d 1189, 1193 (8th Cir. 1992) (noting that presence of .22 caliber shells inside a suspect's vehicle supported an officer's reasonable suspicion that the vehicle contained a weapon). Estep exited his vehicle and starting moving towards Officer Peace, which Peace interpreted as Estep trying to assert control over the situation. See Michelletti, 13 F.3d at 842 (finding that suspect's "purposeful strides" were a fact supporting an officer's reasonable suspicion); United States v. Coleman, 969 F.2d 126, 131-32 (5th Cir. 1992) (finding that the fact that a suspect "exited quickly" after a traffic stop supports an officer's reasonable suspicion).[11] When Officer Peace asked Estep about weapons in the truck, Estep distracted Officer Peace by waving his key chain at Officer Peace and asking if mace was a weapon. Based on Estep's answers to his questions, Officer Peace became concerned about the presence of weapons and requested backup. In light of the totality of the circumstances, Officer Peace was reasonable in concluding from Estep's behavior and the

---

[11] The majority cites United States v. Hunt, 253 F.3d 227 (5th Cir. 2001), for the proposition that a person's decision to exit his vehicle does not create reasonable suspicion. In Hunt, we held that the mere fact that a person exits his vehicle is not alone enough to constitute reasonable suspicion. See id. at 232-34. In this case, Officer Peace articulated other suspicious behavior aside from the fact that Estep exited his truck.

items spotted in Estep's truck that Estep may have a firearm. Further, Officers Quillen and Conley appropriately relied on Officer Peace's assessment of the situation. See Ibarra-Sanchez, 199 F.3d at 759-60 (finding that police officers need not have personal knowledge of facts giving rise to reasonable suspicion; one officer may rely on another officer's observations).

The finding that there was reasonable suspicion in this case is in line with our precedents. Initially, it has long been recognized that "investigative detentions involving suspects in vehicles are especially fraught with danger to police officers." Long, 463 U.S. at 1052; see also Adams v. Williams, 407 U.S. 143, 146 (1972) ("[T]he policeman making a reasonable investigatory stop should not be denied the opportunity to protect himself from attack by a hostile suspect."). Further, we have upheld vehicle searches on similar facts in several cases.[12] See, e.g., Baker, 47 F.3d at 694-95 (finding reasonable suspicion based on suspect's nervousness, evasiveness, and the sight of bullets in the vehicle); Coleman, 969 F.2d at 131-32 (finding reasonable suspicion based on a suspect's quick exit from his vehicle, his nervousness, and money found during a protective pat-down);

_____

[12] The majority attempts to distinguish these cases by saying that each involved "a much greater degree of suspicious behavior" than in the present case. The cited cases provide a level of suspicious activity analogous to Estep's behavior here. Particularly on point is Baker, where we found reasonable suspicion based solely on an officer's assessment of the suspect's suspicious manner and evidence of gun ownership. See 47 F.3d at 694-95.

23

United States v. Maestas, 941 F.2d 273, 277-78 (5th Cir. 1991) (finding reasonable suspicion when a suspect appeared aggressive and intoxicated and, after returning to his vehicle, leaned forward, possibly to grasp a weapon under his seat). Our precedents indicate that officers need only articulate a minimum amount of facts to support reasonable suspicion. See, e.g., United States v. Colin, 928 F.2d 676, 678 (5th Cir. 1991) (upholding weapons frisk of a passenger who "stoop[ed] down and mov[ed] from side to side" in front seat of automobile). We have held that even a suspect's innocent behavior may provide facts sufficient to make an experienced police officer justifiably suspicious. See United States v. Jacquinot, 258 F.3d 423, 427-28 (5th Cir. 2001), cert. denied, 122 S. Ct. 925-26 (2002).

The majority in this case concludes that "there were no specific articulable facts from which Officer Peace could have lawfully concluded that he was in danger." I disagree. Particularly in light of our repeated acknowledgments of the dangers police officers face during traffic stops, I refuse to second-guess Officer Quillen's search of Estep's truck, even on the facts as Estep has alleged them.[13] Thus, I would affirm the

---

[13] I certainly do not suggest that any time a person's vehicle contains camouflage clothing, hunting gear, and an NRA sticker, a police officer may search the vehicle. Every traffic stop is different. Rather, I would uphold the search in this particular case because the officers are able to articulate a reasonable basis for their suspicion that Estep's truck contained a weapon.

district court's grant of summary judgment in favor of Officers Peace, Quillen, and Conley.

B.   Is There a Fact Question as to Whether the Fourth Amendment Was Violated?

Alternatively, if the undisputed facts and the disputed facts as Estep has alleged them do not establish clearly enough that there was no Fourth Amendment violation, there is a serious factual dispute that should be resolved before that question is decided.

While Estep claims he was polite and cooperative during the traffic stop, the police officers tell quite a different story. According to Officer Peace, as he approached the truck, Estep quickly exited the truck and came toward him.  Officer Peace noticed camouflage material, what he thought was hunting gear, and an NRA sticker and was concerned that Estep might have a firearm.  Officer Peace then asked Estep several times whether Estep had a weapon in the vehicle; Estep never gave him a straight answer.  The first time Officer Peace asked whether he had a weapon, Estep asked why he had been stopped.  After Officer Peace again asked Estep if he had a weapon, Estep "made a quick move with his hand" to reach inside his truck.  Estep retrieved a key chain containing mace and waved the mace in Officer Peace's face, asking if mace was a weapon.  According to Officer Peace,

25

Estep then began explaining his view of his constitutional right to carry a firearm. Officer Peace became so concerned for his own safety that he called for backup. Clearly, a factfinder crediting Officer Peace's version of events would find that there was no Fourth Amendment violation. Estep's evasive yet confrontational behavior, combined with Officer Peace's observations of camouflage material, hunting gear, and an NRA decal, is more than enough to show reasonable suspicion. See, e.g., Baker, 47 F.3d at 694-95; Coleman, 969 F.2d at 131-32; Maestas, 941 F.2d at 277-78. Since the majority does not find it clear, as I do, that there was no Fourth Amendment violation on Estep's version of the events, it should have reversed and remanded for a resolution of the disputed facts bearing on whether there was a Fourth Amendment violation rather than holding that qualified immunity is unavailable. See, e.g., Goodson v. City of Corpus Christi, 202 F.3d 730, 736-40 (5th Cir. 2000).

C.   Did Officers Peace, Quillen, and Conley Act Unreasonably in Light of Clearly Established Law?

Returning to the undisputed facts and Estep's version of the disputed facts, even if the police officers' suspicion that Estep carried a weapon was not reasonable under the Fourth Amendment, I

26

do not believe the officers acted so outrageously that they are undeserving of qualified immunity.[14]

A public official performing discretionary functions is entitled to qualified immunity from lawsuits arising out of those activities. See Glenn v. City of Tyler, 242 F.3d 307, 312 (5th Cir. 2001). Routine traffic stops are considered discretionary functions. See Trejo v. Perez, 693 F.2d 482, 487 n.9 (5th Cir. 1982). An officer retains qualified immunity so long as he acts reasonably in light of the law clearly established at the time of the violation. See Salas v. Carpenter, 980 F.2d 299, 310 (5th Cir. 1992). For a right to be clearly established, "[t]he contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right." Anderson v. Creighton, 483 U.S. 635, 640 (1987); see also Pierce v. Smith, 117 F.3d 866, 882 (5th Cir. 1997) ("For qualified immunity to be surrendered, pre-existing law must dictate, that is, truly compel (not just suggest or allow or raise a question about), the conclusion for every like-situated, reasonable government agent that what [the] defendant is doing violates federal law in the circumstances.") (quotations omitted) (emphasis in original). Put another way, if reasonable

---

[14] Even if an officer violates the Fourth Amendment, he may still be entitled to qualified immunity. See Bigford v. Taylor, 896 F.2d 972, 974-75 (5th Cir. 1990).

27

police officers would disagree as to whether the search was lawful, the right to be free from the search was not clearly established and the officer retains qualified immunity. See Anderson, 483 U.S. at 638-40.

Once an officer pleads the qualified immunity defense, the burden shifts to the plaintiff to show that the officer violated clearly established law. See Pierce, 117 F.3d at 871-72; Salas, 980 F.2d at 306. It is thus Estep's burden to show that under the facts of this case, it was clearly established that the officers could not reasonably believe their safety was in danger. Estep's burden is a significant one; qualified immunity gives ample room for mistaken judgments and protects "all but the plainly incompetent or those who knowingly violate the law." Malley v. Briggs, 475 U.S. 335, 341 (1986).

Officers Peace, Quillen, and Conley are entitled to qualified immunity in this case. At the time of the traffic stop at issue here, it was clearly established that a police officer may conduct a weapons "frisk" of a vehicle based on reasonable suspicion. See, e.g., Long, 463 U.S. at 1049. There is no Supreme Court or Fifth Circuit precedent that is factually on all fours with this case, but we would not expect that because, as the Supreme Court has recognized, the Fourth Amendment inquiry is so fact-specific. See Anderson, 483 U.S. at 639-40. The law at

28

the time of the alleged violation indicated that reasonable suspicion was a forgiving, totality-of-the-circumstances standard. See, e.g., Graham v. Connor, 490 U.S. 386, 396-97 (1989). And by 1993, we had routinely upheld weapons frisks on similar facts, requiring officers to articulate only a minimum level of suspicion. See, e.g., Coleman, 969 F.2d at 131-32; Maestas, 941 F.2d at 277-78; Colin, 928 F.2d at 678.

In this case, the police officers were called upon to make a split-second determination as to Estep's dangerousness. Officer Peace relied on his experience and judgment in determining that Estep's behavior was suspicious. Officer Peace also observed items in Estep's truck that indicated Estep might have a weapon. When Officers Quillen and Conley arrived on the scene, Officer Peace told them he was concerned about the presence of a weapon in the vehicle. A reasonable officer could have been concerned for his safety under the circumstances presented here. Even if Officer Peace was mistaken in his belief that the search was lawful, our qualified immunity jurisprudence forgives such mistakes. See, e.g., Saucier, 533 U.S. at 205 (noting officers must be protected from liability for reasonable mistakes because they must make split-second judgments in uncertain circumstances). Officer Peace did not engage in the kind of

egregious behavior we require before stripping an officer of his qualified immunity.

Whether the officers had reasonable suspicion under the Fourth Amendment is a close call. We expect police officers routinely to make close calls during traffic stops. When they guess wrong, we protect their reasonable decisions with qualified immunity. Estep did not point to clearly established law that would make Officer Quillen's search unjustifiable. Thus, the district court properly granted summary judgment in favor of Officers Peace, Quillen, and Conley.[15]

## III. CONCLUSION

It is clear to me that, even on the undisputed facts and Estep's version of the disputed facts, the police officers in this case reasonably suspected that Estep might have a weapon in his vehicle. It is also clear to me that the police officers in this case did not act with the kind of careless indifference to civil rights that this circuit requires before stripping them of qualified immunity. I therefore dissent from the portion of the judgment reversing the district court's summary judgment in favor of Officers Peace and Quillen. Alternatively, I would reverse and remand for resolution of the disputed facts in order to

---

[15] Because I believe that the search was lawful and that the officers deserve qualified immunity, I do not consider the issue of whether Officers Peace and Conley retain qualified immunity because they did not actively participate in the search.

determine whether there was a Fourth Amendment violation before addressing the issue of qualified immunity.

I am dismayed by the probability that Estep has received a free pass in this case because his pick-up truck sports an NRA sticker.