JONES, Circuit Judge,
dissenting:
The question the majority decide is whether officers formed a sufficient “reasonable suspicion” to attempt patting down a suspect walking away from an apparently broken down truck beside a major highway. Unusual facts imbue this police-suspect encounter, which should have warranted a narrow, fact-bound decision. Instead, my colleagues have chosen to engage in a broad analysis that departs from established Fifth Circuit authority and even from Terry v. Ohio, 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968), the interpretive root of Fourth Amendment precedent. I dissent. This conviction should be upheld and, more importantly, the right of peace officers to act for their own safety on facts that would raise suspicion in the minds of any reasonable observer (including judges) should also be vindicated.
Consider first the facts. The patrol officers saw Monsivais walking eastbound on Interstate Highway 20 at dusk, in a rural area, and stopped to offer him assistance. Monsivais fluffed them off, walking directly by their car without saying a word. What kind of person, unless perhaps inebriated, mentally ill, or engaged in criminal behavior, would go around the patrol car *364 to avoid the officers who are the only humans around and who could have helped him? When accosted, his answers to their polite questions made no sense. He couldn’t tell them where he came from. He said he was headed to Ft. Worth, but his car was pointing in the opposite direction. He kept placing his hands in his pockets (where a weapon might be concealed) and had to be reminded multiple times to remove them. He acted extremely nervous and jittery, although the officers were in no way aggressive or threatening.
Who would not have regarded the totality of this bizarre behavior as suspicious? And why give no deference to Deputy Sheriff Baker, who frequently encountered people walking along the highway and never found them nervous in talking with him? Officer Baker had conducted more than a hundred traffic stops, and Officer Saldana had over thirty years of law enforcement experience. The majority concede that Monsivais’s behavior “might not have been typical of all stranded motorists.” This is a clever but misleading judicial understatement. The officers were not harassing a guy on a city street. Law-abiding or sober people whose cars are stuck on the side of a highway, far out in the country, at dusk may fear to seek assistance from non-uniformed good Samaritans. But it is impossible to conceive that they’d flaunt their libertarian instincts to avoid contact with helpful law enforcement officers. The facts cry out reasonable suspicion.
Consider next the majority’s application of long-settled law to the facts. The law is clear that a reviewing court examines the “totality of the circumstances,” in light of the officers’ training and experience, and should uphold the stop only if “the detaining officer ha[d] a ‘particularized and objective basis’ for suspecting legal wrongdoing.” United States v. Arvizu, 534 U.S. 266, 273, 122 S.Ct. 744, 750, 151 L.Ed.2d 740 (2002) (internal quotation omitted). Equally important, this court holds that the district court’s denial of a motion to suppress must be upheld “if there is any reasonable view of the evidence to support it.” United States v. Michelletti, 13 F.3d 838, 841 (5th Cir. 1994) (en banc) (emphasis added). The majority’s application of these standards is incomprehensible.
The majority ignore the officers’ training and experience. The majority then deconstruct each item referenced in the officers’ testimony, and finding each one “alone” insufficient to establish reasonable suspicion, stretch to the conclusion that, taken as a whole, they had no reasonable suspicion thát Monsivais had violated or was about to violate the law. The majority conclude that “if the totality of the circumstances prior to the seizure of the defendant does not provide a particularized and objective basis for suspecting the particular person seized of criminal activity, the seizure violates the Fourth Amendment.” They add that, “[t]here must be some ar-ticulable premise — some fact linking that behavior to reasonably suspected criminality.” They characterize the legal requirement as an “objectively logical path of deduction” that is “contextually or inherently suggestive of criminal activity.”
What does the majority’s reasoning mean? Exactly what additional facts were necessary to imply a “context or suggestion” of criminal activity by Monsivais? Did they have to see a bulge in his breast pocket, drug paraphernalia dangling from his pants, smudges of white powder on his clothes? The majority emphasize that the officers had no suspicion of exactly what crime Monsivais might have perpetrated or contemplated, but “reasonable suspicion” is a much lower standard than “probable cause.” Arvizu, 534 U.S. at 274, 122 S.Ct. at 751. Even less does Terry demand “particularized suspicion of a particular, *365 specific crime.” United States v. Pack, 622 F.3d 383, 383 (5th Cir. 2010). In Terry, the officer patdown was approved by the Supreme Court simply on “reasonable suspicion” that the defendants, seen hanging around a jewelry shop, might be casing the establishment for a robbery. 392 U.S. at 28, 88 S.Ct. at 1883. The Supreme Court recently reiterated these bare facts and approvingly summarized the holding of Terry:
Terry established the legitimacy of an investigative stop “in situations where [the police] may lack probable cause for an arrest.” Id., at 24, 88 S.Ct. 1868. When the stop is justified by suspicion (reasonably grounded, but short of probable cause) that criminal activity is afoot, the Court explained, the police officer must be positioned to act instantly on reasonable suspicion that the persons temporarily detained are armed and dangerous. Ibid. Recognizing that a limited search of outer clothing for weapons serves to protect both the officer and the public, the Court held the patdown reasonable under the Fourth Amendment. Id. at 23-24, 27, 30-31, 88 S.Ct. 1868.
Arizona v. Johnson, 555 U.S. 323, 330, 129 S.Ct. 781, 786, 172 L.Ed.2d 694 (2009). In Terry, the Supreme Court relied heavily on the officers’ seasoned judgment. 392 U.S. at 22-23, 88 S.Ct. at 1880-81. Yet under the majority’s reasoning here, bereft of deference to the law enforcement officers, how could the Terry defendants’ walking back and forth in front of the jewelry store constitute an “articulable premise” and a “fact linking [the defendants’] behavior to reasonably suspected criminal activity”?
This court long ago relied on Terry in an en banc decision that upheld an officer’s patdown of a suspect who barged out the back door of a bar at closing time. Michelletti, 13 F.3d at 839. The officer’s suspicions were aroused principally by the aggressiveness of the man’s stride toward a group of men and by his holding a beer in the left hand while his right hand remained in his pants pocket. (A convicted felon, the man illegally possessed a handgun in that pocket.) The majority fail to mention, much less distinguish Michelletti, which has been frequently cited and remains controlling in this court. See, e.g., Allen v. Cisneros, 815 F.3d 239, 245 (5th Cir. 2016); Estep v. Dallas Cty., Tex., 310 F.3d 353, 363-64 (5th Cir. 2002); United States v. Baker, 47 F.3d 691, 694 (5th Cir. 1995); United States v. Scroggins, 599 F.3d 433, 441 (5th Cir. 2010). Under the majority’s reasoning, what additional facts would have been necessary to create an “objectively logical path of deduction” and uphold the patdown of Michelletti?
The majority cite only one case from this circuit to support suppression of the evidence incriminating Monsivais, and they stretch that ease well beyond its facts. In Hill, this court concluded that officers incorrectly insisted on doing a patdown on the basis of nothing more than “almost entirely ordinary” behavior by the defendant and a woman who’d been sitting in his car in apartment complex parking lot. United States v. Hill, 752 F.3d 1029, 1034 (5th Cir. 2014). This court’s commonsense conclusion was that “[r]easonable officers in such circumstances would have very little cause to suspect criminal activity rather than, say, a couple who just arrived home on a weekend night and were preparing to go inside.” 752 F.3d at 1038. In contrast to Hill, there is nothing “almost entirely ordinary” about Monsivais’s conduct in his encounter with these officers. Hill is readily distinguishable.
It is relevant to the Fourth Amendment inquiry that the officers’ seizure of Monsi-vais involved only the level of intrusion *366 necessary to assure their safety. Scroggins, 599 F.3d at 441. That is to say, the handcuffing and actual frisk occurred only after he had voluntarily revealed a handgun in his waistband. (The record contains no suggestion that Monsivais tried to claim possession of a concealed handgun permit). Recall as well this defendant’s repeatedly reaching into his pockets where weapons might also be concealed. Under such circumstances, officers conducting a Terry stop may pat down and even handcuff a subject to ensure their personal safety. United States v. Webster, 162 F.3d 308, 332 (5th Cir. 1998); see also United States v. Hurd, 785 F.3d 311, 315 (8th Cir. 2015) (frisk justified where the person refused to remove hands from pockets when walking toward police).
The majority opinion, in my view, conflicts with Terry and this court’s precedent and may create great confusion for officers on the beat. Over twenty years ago, this court noted in Michelletti that since Terry had been decided, “the number of police officers killed annually in the line of duty has tripled ... [and] the numbers of those assaulted and wounded has risen' by a factor of twenty.” 13 F.3d at 844 (citation omitted). The dangers inherent in law enforcement to officers and the public has, if anything, intensified in recent years. “Surely the constitutional legitimacy of a brief patdown such as occurred here may and should reflect the horrendously more violent society in which we live, [forty-nine] years after Terry.” Id. I respectfully dissent.