IN THE UNITED STATES COURT OF APPEALS

FOR THE FIFTH CIRCUIT

_____

No. 92-4742

_____


UNITED STATES OF AMERICA,

Plaintiff-Appellee,

v.

ROBERT RYLES, JR.

Defendant-Appellant.

_____

Appeal from the United States District Court
for the Eastern District of Texas
_____

(March 25, 1993)

Before KING and EMILIO M. GARZA, Circuit Judges, and COBB[*],
District Judge.

KING, Circuit Judge:

Robert Ryles appeals the district court's denial of his pre-
trial motion to suppress evidence of drug and weapon possession.
Ryles conditionally pled guilty to possession of cocaine with the
intent to distribute, a violation of 18 U.S.C. § 841(a)(1), but
reserved his right to appeal the district court's denial of the
motion to suppress. Ryles also appeals the district court's
increase of Ryles' offense level pursuant to § 2D1.1(b)(1) of the
United State Sentencing Guidelines. Finding no error, we affirm

_____

[*] District Judge of the Eastern District of Texas, sitting
by designation.

both Ryles' conviction and sentence.

## I.

The following facts are essentially undisputed.  On September 20, 1991, at approximately 1:30 a.m. on a rural East Texas highway, Trooper Barry Washington of the Texas Department of Public Safety noticed that a brown van changed lanes without signaling.  Because the driver, Appellant Ryles, had violated a Texas traffic regulation, Washington ordered the van, which carried numerous passengers, to pull over along side the highway.  After pulling over, Ryles immediately exited the van and approached Washington, who had also exited his patrol car and was approaching the driver's side of the van.

Washington asked Ryles, the admitted driver of the van, to produce a driver's license.  Ryles responded that he did not have one, and instead only produced an Illinois identification card.  Washington also asked Ryles whether there was liability insurance on the van, as required by Texas law.  Ryles indicated that he was not the owner of the van and was unaware whether it was insured.  Because Washington smelled alcohol on Ryles' breath, Ryles was required to submit to a roadside sobriety test, which Ryles passed to Washington's satisfaction.  Nevertheless, because Ryles was not a licensed driver, Washington asked Ryles whether any of the passengers in the van possessed a driver's license.  Ryles responded that he believed that one of the passengers was licensed.  Washington accordingly approached the van.  Almost

2

immediately after he reached the driver's door, he smelled burnt marijuana.[2]  A subsequent warrantless search of the van yielded cocaine and the weapon that formed the basis of Ryles' conviction and sentence.[3]

## II.

### A. Ryles' Fourth Amendment claim

On appeal, it is disputed whether Trooper Washington opened the driver's side door or stuck his head inside an open window *before* he smelled the marijuana.[4]  The district court failed to make a finding regarding whether Washington smelled the marijuana before he pierced the airspace inside the vehicle. Ryles argues that we should remand the case to the district court for further fact-finding.  The Government argues that, even if Washington pierced the airspace inside the van before he smelled the burnt marijuana, such an act was not an unconstitutional warrantless "search" within the meaning of the Fourth Amendment.

We disagree with the Government that Washington's action did not constitute a "search" for Fourth Amendment purposes. Irrespective of when he smelled the marijuana, Washington,

---

[2] It is undisputed on appeal that Washington's smelling the marijuana afforded probable cause to engage in a warrantless search of the van.  See United States v. Merryman, 630 F.2d 780, 784 (10th Cir. 1980).

[3] Ryles argues that the cocaine and weapon seized should be suppressed as "fruits from a poisonous tree."  See Wong Sung v. United States, 371 U.S. 471 (1963).

[4] At the pre-trial suppression hearing, Washington did not remember whether he had placed his head inside the vehicle.  A passenger in the vehicle testified that Washington opened the van's door and stuck his torso inside the vehicle.

without a search warrant, intruded inside a space that, under most circumstances, is protected by a legitimate expectation of privacy.  See United States v. Pierre, 958 F.2d 1304 (5th Cir. 1992) (en banc); cf. United States v. Lovell, 849 F.2d 910, 913 (5th Cir. 1988) (airspace around luggage transported on common carrier not protected zone of privacy under Fourth Amendment). Although there is generally a diminished privacy interest in an automobile, as opposed to a residence, see, e.g., Chambers v. Maroney, 399 U.S. 42 (1970), a driver or car owner does not abandon all expectations of privacy.

Nevertheless, like any other Fourth Amendment privacy interest, the expectation of privacy in the inside airspace of an automobile is not absolute.  Rather, if Washington's intrusion was reasonable, his "search" was not a Fourth Amendment violation.  See Maryland v. Buie, 494 U.S. 325, 331 (1990) ("It goes without saying that the Fourth Amendment bars only unreasonable [warrantless] searches and seizures.").  As the Court noted in Buie, "[o]ur cases show that in determining reasonableness, we have balanced the intrusion of the individual's Fourth Amendment interests against [the] promotion of legitimate governmental interests."  Id.

In the particular factual context of the instant case, we do not believe that Trooper Washington would have been unreasonable either in placing his head inside the interior of the van through an open window or in opening the driver's door and placing his torso inside, even assuming he did not smell marijuana before the

4

intrusion.  Our conclusion is based on the reason behind Washington's actions.  After pulling over a van in the wee hours of the morning on a relatively deserted Texas highway, Washington was immediately approached by the driver, who smelled of alcohol and admitted that he had no driver's license.  Even though Ryles was not intoxicated, he still could not lawfully drive the van.  At the Ryles' own suggestion, Washington approached the van to inquire whether anyone else in the van was licensed and could drive the vehicle away.  Although he did not say so at the suppression hearing, we believe that Washington would have considered it necessary to determine whether the passenger who would ultimately be driving the van was impaired by alcohol -- since, after all, Ryles had alcohol on his breath.  Even assuming that he walked up to the driver's door and opened it without knocking, Washington would only have been attempting to assure that the van would be driven safely.  We can hardly say that this would have been unreasonable.  Cf. New York v. Class, 475 U.S. 106 (1986) (police officer's intrusion into interior of vehicle to remove papers obstructing VIN number not unreasonable warrantless search).

Ryles further argues that Washington's actions -- again assuming that he intruded into the interior of the van before smelling burnt marijuana -- were unreasonable because he did not pursue the "least intrusive" course in inquiring about whether any of the van's passengers were licensed.  In particular, Ryles argues that Washington could have asked the passengers to step

5

outside the van.  Again, in view of the particular circumstances facing Washington -- including the fact that it was Ryles himself who suggested that Washington ask the other passengers if they were licensed, cf. Illinois v. Rodriquez, 497 U.S. 177 (1990) (warrantless search valid when police reasonably believe they have consent to search) -- we cannot say that Washington acted unreasonably.

In conclusion, we stress the limited nature of our holding. We do not intend to suggest that a police officer may in all circumstances constitutionally intrude into the interior of a vehicle simply because he has temporarily lawfully detained the vehicle because of a traffic violation.  We, therefore, reject the Government's argument that we should extend the "vehicle frisk" doctrine to the facts of this case.  See Michigan v. Long, 463 U.S. 1032 (1983) (holding that police may engage in warrantless "frisks" of vehicles when they have reasonable belief that driver poses danger and that weapon may be inside car). Rather, we hold only that, in view of the particular circumstances of this case, Trooper Washington acted reasonably, even assuming he did intrude into the interior space of the van before smelling burnt marijuana.  Thus, we see no need to remand for further fact-finding.


**B. Ryles' § 2D1.1(b)(1) claim**

Ryles also raises a second claim.  He argues that the trial court erred by increasing his offense level by two, pursuant to

U.S.S.G. § 2D1.1(b)(1).  That provision of the Guidelines permits an increase in a defendant's offense level if a firearm was possessed during the commission of a drug offense.  Ryles argues that § 2D1.1(b)(1) was inapplicable in his case because the shotgun found in the van was disassembled.  The Government claims that it was only "disassembled" in that the barrel was removed from the stock and that it could have been assembled in thirty seconds or less.  The presentence investigation report, which was adopted by the district court, specifically found that the gun could have been assembled in thirty seconds.  Ryles did not object to that finding.

Ryles cites cases in which courts implied that "inoperable" weapons in certain cases would preclude a district court from imposing a § 2D1.1(b)(1) increase.  <u>See</u>  <u>United States v. Paulk</u>, 917 F.2d 879, 882 (5th Cir. 1990); <u>United States v. Luster</u>, 896 F.2d 1122 (8th Cir. 1990); <u>United States v. Burke</u>, 888 F.2d 862 (D.C. 1989).  In those cases, the courts held that there was no <u>per</u> <u>se</u> bar to imposing a § 2D1.1(b)(1) increase based on "inoperable" weapons so long as those weapons "at the time of the offense did not appear clearly inoperable."   In this regard, the Guidelines defines a "firearm" as "any weapon . . . which will or is designed to <u>or may readily be converted to expel a projectile by the action of the explosive</u>. . . "  U.S.S.G. § 1B1.1 (Application Note 1(e)) (emphasis added).   Because Ryles' disassembled shotgun could have been "readily converted" to an operable firearm, the district court properly imposed a §

7

2D1.1(b)(1) increase in Ryles' offense level.

### III.

For the foregoing reasons, we AFFIRM both Ryles' conviction and sentence.