IN THE UNITED STATES COURT OF APPEALS

FOR THE FIFTH CIRCUIT
_____

No. 00-60333
_____

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

v.

MARCELLUS HUNT,

Defendant-Appellant.
_____

Appeal from the United States District Court
for the Northern District of Mississippi
_____

June 1, 2001

Before:  KING, Chief Judge, and ALDISERT* and BENAVIDES, Circuit
Judges.


ALDISERT, Circuit Judge:

We decide today whether Appellant's Fourth Amendment rights
were violated when the automobile he was driving, which had been
stopped by a state trooper for a traffic violation, was searched
simply because Appellant got out of the car to meet the state
trooper rather than waiting inside the vehicle for the trooper to
approach him.  At the suppression hearing, the trooper testified
that, in every case in which a driver disembarks from an

_____

*Circuit Judge of the Third Circuit, sitting by designation.

automobile after being stopped for a traffic violation, he opens the car door to examine the vehicle's interior.[1]  Concluding that Appellant's constitutional rights had not been violated, the district court refused to suppress the evidence seized as a result of the search.  We reverse.

I.

The district court had jurisdiction pursuant to 18 U.S.C. § 3231.  We have jurisdiction on this appeal from a final judgment

---

[1] The trooper testified:

Q.    Now, you went to the driver's side door to inspect the car for weapons; is that correct?

A.    Sir, that or anything else that might arouse my suspicions, I always do it.

Q.    What you're saying is, every car that you stop in broad daylight in a high traffic area, who gets out to meet you and complies with you and gives your [sic] their license as requested, you go and open their vehicle to conduct a search; is that correct?

A.    I do open their vehicle door.

            * * *

Q.    But what you are doing is, you are conducting a search to make sure there are no weapons, alcohol, controlled substance or anything of that nature; correct?

A.    For me, it's officer safety, sir. I guess–yes, sir, I guess you are right.

            * * *

Q.    ... But your reason for going there was to search and to open that door and to look inside for any contraband such as drugs, alcohol, or any weapon; correct?

A.    That's correct.

Tr. at 12-13.

2

of a conditional plea and sentence under 28 U.S.C. § 1271.

This court applies a two-tiered standard of review to a district court's denial of a motion to suppress, reviewing the court's factual findings for clear error and its "ultimate conclusion as to the constitutionality of the law enforcement action de novo."  United States v. Hernandez-Zuniga, 215 F.3d 483, 485-486 (5th Cir. 2000) (quoting United States v. Chavez-Villarreal, 3 F.3d 124, 126 (5th Cir. 1993)); see also United States v. Kirk, 111 F.3d 390, 393 (5th Cir. 1997) ("When reviewing a motion to suppress based on live testimony, we must accept a district court's findings of fact unless clearly erroneous or influenced by an incorrect view of the law.").  We view the evidence in the light most favorable to the party that prevailed in the district court.  See United States v. Dortch, 199 F.3d 193, 197 (5th Cir. 1999).


II.

On July 13, 1999, Appellant Marcellus Hunt was stopped by Officer Davidson of the Mississippi Highway Patrol for speeding. The stop occurred on a four-lane highway at 1:45 p.m.  Appellant was driving a 1999 Buick Century which did not have tinted windows.  Dewaun Dorse was a passenger in the car.

After being pulled over, Appellant left his car, shutting the door behind him, and walked to the back of the Buick to meet

Davidson.  After Appellant complied with Davidson's request to produce a valid driver's license, Davidson walked to the driver's side of the Buick and opened the door.

Davidson visually searched the car and spoke with Dorse. As Davidson prepared to shut the driver's side car door, he observed a clear plastic bag stuffed in the indentation that serves as a door handle on the door.  Davidson contends that the contents of the clear plastic bag appeared to be crack cocaine.

After spotting the drugs in his search of the vehicle, Davidson walked back towards Appellant who was waiting at the rear of the car.  As he was returning to Appellant, Davidson noticed for the first time an empty gun holster on the floorboard behind the driver's seat.  Davidson frisked Appellant, placed him under arrest, and then arrested Dorse.  Incident to these arrests, Davidson searched the Buick and found a bag of powder cocaine in the glove box and a handgun in the center armrest.

Appellant was charged in a two-count indictment.  Count One charged Appellant with aiding and abetting possession with intent to distribute 248.47 grams of cocaine salt (powder cocaine) and 5.72 grams of cocaine base (crack cocaine).  Count Two charged Appellant with possession of a firearm by a convicted felon.

Appellant filed a motion to suppress, which the district court denied, concluding that "the officer [was] within his authority in opening the door of a car after a traffic search to

4

look for weapons." Following the denial of his motion, Appellant entered a conditional guilty plea, subject to the appeal of the denial of the suppression motion.

## III.

The Fourth Amendment guarantees that "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated." U.S. CONST. amend. IV. The essential purpose of the Fourth Amendment is to impose a standard of "reasonableness" upon law enforcement agents and other government officials in order to prevent arbitrary invasions of the privacy and security of citizens. Delaware v. Prouse, 440 U.S. 648, 653-654 (1979).

The protection of the Fourth Amendment is enjoyed not only in the home, but on the sidewalk and in a person's automobile. See Delaware v. Prouse, 440 U.S. at 663 (citing Terry v. Ohio, 392 U.S. 1, 19 (1968) and Adams v. Williams 407 U.S. 143, 146 (1973)) ("[P]eople are not shorn of all Fourth Amendment protection when they step from their homes onto the public sidewalks. Nor are they shorn of those interests when they step from the sidewalks into their automobiles."). It is well established that a traffic stop is a limited seizure within the meaning of the Fourth Amendment, Delaware v. Prouse 440 U.S. at 653, and that intrusion into the interior of an automobile for

5

investigative purposes constitutes a search, New York v. Class, 475 U.S. 106, 114-115 (1986). The stopping of an automobile and the detention of its occupants constitutes a "seizure," even when the purpose of the stop is limited and the resulting detention brief. Delaware v. Prouse 440 U.S. at 653. "While the interior of an automobile is not subject to the same expectations of privacy that exist with respect to one's home, a car's interior as a whole is nonetheless subject to Fourth Amendment protection from unreasonable intrusions by the police." Class, 475 U.S. at 114-115.

The Court specifically has rejected a "bright-line" rule that an automobile search incident to a traffic citation is permissible without reasonable suspicion or probable cause for the search. See Knowles v. Iowa, 525 U.S. 113, 117 (1998); see also Michigan v. Long, 463 U.S. 1032, 1049 (1983). Davidson could not search the automobile without some articulable, individualized suspicion that the automobile contained weapons or contraband. United States v. Michelletti, 13 F.3d 838, 840 (5th Cir. 1994) ("Reasonable suspicion must be supported by particular and articulable facts, which, taken together with rational inferences from these facts, reasonably warrant an intrusion."). Thus, we must determine whether Davidson's search of Appellant's automobile, based only on Appellant's exit from the vehicle, was an unnecessary intrusion. We believe that it was.

6

IV.

Appellant admits that he was lawfully stopped for driving 85 miles-per-hour in a 70 mile-per-hour speed zone. Appellant concedes also that Davidson had the right to inspect the car visually for the purpose of observing weapons or contraband in plain view. See Whren v. United States, 517 U.S. 806, 809 (1996). The fact that Appellant was lawfully stopped, however, does not justify Davidson's intrusion into Appellant's car for the purpose of performing the search of the vehicle's interior that unearthed the evidence at issue in this case. Under existing Fourth Amendment jurisprudence, the officer had the right only to remove from the vehicle Appellant, the driver, (had he still been inside), see Pennsylvania v. Mimms, 434 U.S. 106, 111 (1977), and Dorse, the passenger, see Maryland v. Wilson, 519 U.S. 408, 414 (1997). Officer Davidson could not search the automobile's interior without objective evidence of criminal activity or of potential danger to the officer. And, had he not opened the car door to search the interior, Davidson admits that he would not have seen the plastic bag stuffed into the driver's side door handle.

The facts developed at the suppression hearing demonstrate that Davidson did not have probable cause or reasonable suspicion to open Appellant's car door and conduct a search. Davidson

7

conceded as much when he testified that: (1) Appellant was compliant and cooperative when the officer requested Appellant's driver's license, (2) there was nothing in Appellant's dress or demeanor that caused him any concern, (3) Dorse did not make any movements that caused Davidson any concern, (4) he did not suspect that Appellant or Dorse possessed any drugs or contraband or that Appellant was in possession of a weapon, (5) he did not smell any alcohol or suspect that Appellant was driving under the influence of an illicit substance, (6) there was no reason to believe that the Buick was stolen or that there was anything wrong with the license plate, the inspection sticker, or Appellant's driver's license, (7) there was "nothing unusual about the situation," and (8) Appellant did not do or say anything to cause Davidson to be concerned or worried.

Davidson testified that the reason he went to the driver's door was because Appellant had left the vehicle to meet him outside the car. On cross-examination, Davidson stated: "Anytime someone does that, sir, I always go on to the driver's door to make sure there is nothing in there, for officer safety; no weapons or anything else is in the car." Tr. at 11. Davidson admitted that he "automatically" undertook this search whenever anyone exited a vehicle during a routine traffic stop, and that he recognized that his opening of the door and leaning into the car was a "search" under the Fourth Amendment. Id. at 12-13, 21;

8

see <u>U.S. v. Ryles</u>, 988 F.2d 13, 15 (5th Cir. 1993).

Davidson's regular practice of conducting a search whenever a driver leaves his or her vehicle during a routine traffic stop is in direct conflict with the constitutional requirement that automobile searches be conducted only when there are particular objective factors warranting the intrusion. An individual's decision to step out of his or her vehicle to greet a detaining officer does not create the individualized suspicion required for an automobile search. See <u>Goodson v. City of Corpus Christi</u>, 202 F.3d 730, 735 (5th Cir. 2000) (stressing that an officer "must be able to articulate something more than an inchoate and unparticularized hunch" for a search to be permissible). Officer Davidson's admission that his regular practice is to search for contraband without individualized reasonable suspicion is fatal to the government's case.

The government has presented no empirical data, nor has our independent research discovered any, suggesting that the act of a driver who has been stopped for a traffic violation leaving his car to greet the officer creates either a permissible or compellable inference that the automobile contains contraband or weapons. For an intrusion to be warranted, there must be appropriate inferences drawn from the facts specific to the situation at hand. No such facts were present here.

V.

The government attempts to justify Officer Davidson's search by arguing that: (1) Appellant's decision to leave the Buick and meet Davidson in the rear of the car was not, according to Davidson, a common practice for drivers who are stopped for routine traffic violations; (2) Davidson's search of the car for "officer safety" was a standard and acceptable practice; and (3) Davidson perceived Appellant to be "a little nervous" when he was asked for his license. These arguments fail. We have already rejected the notion that, whether it is a common practice or not, the act of leaving a vehicle to greet a detaining officer creates the reasonable suspicion necessary to justify an automobile search for weapons or contraband. We have dismissed also the government's assertion that Officer Davidson's practice of searching vehicles based only on a generalized fear for officer safety is acceptable under the Fourth Amendment. As to the observation that Appellant was "nervous," Officer Davidson admitted at the suppression hearing that such "nervousness" was not unusual among people who are stopped for traffic violations:

Attorney: Let's talk about this "may have been nervous." You are not testifying that he was nervous, are you?

Davidson: No, sir.

Attorney: You're just saying that he may have been nervous, correct?

Davidson: Yes, sir; that's correct.

Attorney: As any person who is stopped for speeding may have been nervous; is that correct?

10

Davidson: Yes, sir, that's correct.

Tr. at 10-11. Having so testified, Officer Davidson cannot now allege that his search was justified by an unusual level of nervousness exhibited by Appellant.

The government cites numerous cases in an attempt to justify Officer Davidson's search of Appellant's vehicle. Each of these cases can be distinguished from the instant case in one important way. In every case that the government cites, the Officer conducting the search had individualized, particularized suspicion of wrongdoing triggered by specific facts surrounding the detention. See, e.g., Whren, 517 U.S. at 809-810 (finding justification for protective search of a car when suspect was stopped in a "high crime area" in the evening and when the contraband was clearly seen by a vice-squad officer through the driver's side window); Michigan v. Long, 463 U.S. at 1051 (finding justification for protective search of car after defendant had driven into a ditch, had difficulty answering questions due to "some intoxicant," and a knife was spotted by officers); United States v. Baker, 47 F.3d 691, 694 (5th Cir. 1995) (finding justification for protective search of a car after police received contradictory responses to questions regarding their travel itinerary and whether a gun was in the car, where defendants appeared "extremely nervous," and only after spotting a box of ammunition in the car); Ryles, 988 F.2d at 15 (finding

justification for protective search of a car when the driver who left the car to greet the officer had no driver's license, admitted he was not the owner of the van, could not provide proof of liability insurance as required under Texas law, smelled of alcohol (although he passed the field sobriety test), and where the van smelled of marijuana as the officer approached).  In the instant case, Officer Davidson admits that his search of Appellant's vehicle was prompted not by a unique set of facts surrounding the stop of the vehicle, but rather by his generalized perception of individuals who choose to leave their automobiles when they are stopped for routine traffic violations.

Both Michigan v. Long and Ryles specifically warn against the type of vehicle frisk without reasonable suspicion engaged in by Officer Davidson.  In Long, the Court stressed that "our decision does not mean that police may conduct automobile searches whenever they conduct an investigative stop. . . ."  463 U.S. at 1050 n.14; see also Knowles v. Iowa, 525 U.S. 113, 117 (1998) (establishing that the dicta in Long was now elevated to the Court's holding).  In Ryles, this court expressly stated: "We do not intend to suggest that a police officer may in all circumstances constitutionally intrude into the interior of a vehicle simply because he has temporarily lawfully detained the vehicle because of a traffic violation."  988 F.2d at 16.  We adhere to this admonishment now; this simply is not a case in

which the Officer's search of the vehicle can be justified.[2]

## VI.

The government has failed to present any specific, articulable facts to justify Officer Davidson's search of Appellant's vehicle.  Additionally, Officer Davidson has conceded that it is his standard practice to conduct such a search whenever a person voluntarily leaves his or her car during a routine traffic stop.  Because the Fourth Amendment forbids an automobile search absent individualized suspicion of ongoing criminal activity or danger to the officer, we find that the district court erred in denying Appellant's suppression motion.

The judgment of the district court is VACATED.  The Order denying the motion to suppress is REVERSED.

---

[2] The government contends that Officer Davidson saw the holster in plain view as he walked back to Appellant after searching the automobile, and that therefore the evidence should be admitted under the doctrine of inevitable discovery.  See United States v. Kirk, 111 F.3d 390, 392 (5th Cir. 1997).  We need not meet this issue because it was not presented first to the district court,  Sims v. Apfel, 530 U.S. 103, 108 (2000).

13

KING, Chief Judge, specially concurring:

I concur in the judgment reversing the district court's order denying Hunt's motion to suppress and in Judge Aldisert's good opinion for the panel. I write separately to emphasize that the basis for my decision rests in the government's failure to present any evidence to suggest that the act of leaving a lawfully stopped automobile to greet an officer creates an inference that the automobile contains contraband or weapons. Officer Davidson did articulate a general, fact-based suspicion of sorts, which led to his search of the vehicle. He offered no basis, however, for his suspicion drawn either from his own experience or from the specific facts of this stop. There is nothing in the suppression hearing testimony or in the government's evidence that allows this court to determine whether his generalized suspicion was reasonable. Officer Davidson's practice, based on what is, on this record, only a hunch, is not enough.