FOR PUBLICATION

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

UNITED STATES OF AMERICA,
*Plaintiff-Appellee*,

v.

MALIK NGUMEZI,
*Defendant-Appellant.*

No. 19-10243

D.C. No.
3:18-cr-00358-CRB-1

OPINION

Appeal from the United States District Court
for the Northern District of California
Charles R. Breyer, District Judge, Presiding

Argued and Submitted June 8, 2020
San Francisco, California

Filed November 20, 2020

Before: Eric D. Miller and Danielle J. Hunsaker, Circuit
Judges, and Patrick J. Schiltz,[*] District Judge.

Opinion by Judge Miller

---

[*] The Honorable Patrick J. Schiltz, United States District Judge for
the District of Minnesota, sitting by designation.

## SUMMARY[**]

### Criminal Law

The panel reversed the district court's denial of a motion to suppress a firearm found in a search of the defendant's car, vacated his conviction for being a felon in possession of a firearm, and remanded for further proceedings.

The panel held that police officers who have reasonable suspicion sufficient to justify a traffic stop—but who lack probable cause or any other particularized justification, such as a reasonable belief that the driver poses a danger—may not open the door to a vehicle and lean inside.

Because opening the car door and leaning into the car constituted an unlawful search under the Fourth Amendment, the panel considered what remedy is appropriate in this case. The panel held that the exclusionary rule applies to the loaded handgun found under the driver's seat because the government made no effort to satisfy its burden to show that the gun is not "the fruit of the poisonous tree," did not invoke the attenuation doctrine, and did not argue that the inevitable-discovery doctrine applies.

## COUNSEL

Steven J. Koeninger (argued) and Jonathan Abel, Assistant Federal Public Defenders; Steven G. Kalar, Federal Public

[**] This summary constitutes no part of the opinion of the court. It has been prepared by court staff for the convenience of the reader.

Defender; Office of the Federal Public Defender, San Francisco, California; for Defendant-Appellant.

Briggs Matheson (argued), Assistant United States Attorney; Merry Jean Chan, Chief, Appellate Section, Criminal Division; David L. Anderson, United States Attorney; United States Attorney's Office, San Francisco, California; for Plaintiff-Appellee.

## OPINION

MILLER, Circuit Judge:

Following a bench trial, Malik Ngumezi was convicted of being a felon in possession of a firearm, in violation of 18 U.S.C. § 922(g)(1). He appeals the denial of his motion to suppress the firearm, which was found in a search of his car. Because we conclude that the search violated the Fourth Amendment, we reverse the denial of the suppression motion, vacate the conviction, and remand for further proceedings.

The search at issue occurred in the early morning hours of May 6, 2018, after a San Francisco police officer, Kolby Willmes, saw Ngumezi's car parked at a gas station with Ngumezi in the driver's seat. The car had no license plates, in apparent violation of section 5200(a) of the California Vehicle Code. *See People v. Dotson*, 101 Cal. Rptr. 3d 897, 901 (Cal. Ct. App. 2009). Ngumezi had recently purchased the car, and a bill of sale was affixed to the lower passenger-side corner of the windshield.

Willmes approached the car to investigate; because a gas pump blocked access to the driver side, he went to the passenger side. According to Ngumezi, Willmes then

opened the passenger door, leaned into the car, and asked Ngumezi for his driver's license and vehicle registration. For his part, Willmes agrees that he asked for Ngumezi's license and registration and does not deny that he first opened the door and leaned inside. Willmes says that he does not remember whether he opened the door, or whether he instead spoke to Ngumezi through an open window.

Ngumezi produced a California identification card but not a driver's license. Willmes asked Ngumezi if his license was suspended, and Ngumezi admitted that it was. Another officer then ran a license check and confirmed that Ngumezi's license was suspended and that Ngumezi had three prior citations for driving with a suspended license.

San Francisco Police Department policy requires officers to inventory and tow a vehicle when a driver lacks a valid license and has at least one prior citation for driving without a valid license. Consistent with that policy, the officers prepared to have Ngumezi's car towed. In conducting the inventory search, they found a loaded .45 caliber handgun under the driver's seat. The officers then ran a background check and learned that Ngumezi was prohibited from possessing firearms because of a previous felony conviction.

Ngumezi was charged with one count of being a felon in possession of a firearm, in violation of 18 U.S.C. § 922(g)(1). He moved to suppress the firearm as fruit of an unlawful search. He conceded that "Officer Willmes . . . had articulable facts and reasonable suspicion to approach the vehicle" when Willmes saw that it had no plates. But he argued that once Willmes approached, "he necessarily was in eyesight of the proof of sale affixed to the front right-side windshield," and the bill of sale "dissipated reasonable suspicion that the car was not registered." Because

reasonable suspicion had dissipated, Ngumezi argued, "no Fourth Amendment exception permitted the officer's further interrogation, pulling the defendant out of the car, or searching the car."

The district court denied the motion to suppress. The court assumed the correctness of Ngumezi's version of the facts. It emphasized, however, that the "reasonable suspicion inquiry is based on what the officer is *aware of*, and therefore reasonable suspicion cannot be dispelled by facts unknown to the officer." The court noted that Ngumezi did "not allege that Willmes actually saw the proof of sale, only that it was in his line of sight." It concluded that "[w]ithout any evidence, or indeed even the assertion, that the officer in fact *actually* saw the proof of sale, its existence could not have factored into his analysis of the situation and thus could not have dispelled his reasonable suspicion."

After the district court denied the suppression motion, Ngumezi waived his right to a jury trial and requested a bench trial on stipulated facts. The court found Ngumezi guilty and sentenced him to 18 months of imprisonment, to be followed by two years of supervised release.

On appeal, Ngumezi challenges only the denial of the motion to suppress, which we review de novo. *United States v. Ped*, 943 F.3d 427, 430 (9th Cir. 2019). His principal argument is that whether or not Officer Willmes had reasonable suspicion at the time he opened the door, opening the door and leaning inside constituted a search that violated the Fourth Amendment because it was not authorized by any exception to the warrant requirement.

As we have explained, the district court focused on a different argument—that reasonable suspicion should have been dispelled because the bill of sale was visible in the

windshield—and it did not address the argument that opening the door and leaning inside was an unlawful search. We can hardly fault the district court for ignoring that issue because Ngumezi raised it only in a footnote in his reply in support of his motion to suppress. We have held that "a perfunctory request, buried amongst the footnotes, does not preserve an argument on appeal." *Coalition for a Healthy Cal. v. FCC*, 87 F.3d 383, 384 n.2 (9th Cir. 1996). Thus, had the government argued that the issue was forfeited, we would have been compelled to agree. In that case, we could have considered Ngumezi's argument only if he could show good cause for not properly raising it in his motion to suppress. *United States v. Guerrero*, 921 F.3d 895, 897–98 (9th Cir. 2019) (per curiam); *see* Fed. R. Crim. P. 12(c)(3). But the government has not made a forfeiture argument. Instead, it has addressed the issue on the merits and invited us to do so as well. We conclude that the government has forfeited any claim of forfeiture, so we proceed to consider the merits. *United States v. Doe*, 53 F.3d 1081, 1083 (9th Cir. 1995).

In doing so, we assume, as the district court did, that Ngumezi's version of the facts is correct. The key facts are not disputed: Ngumezi says that Willmes opened the car door and leaned into the car, and Willmes does not specifically deny that that is what he did. We therefore must consider whether police officers who have reasonable suspicion sufficient to justify a traffic stop—but who lack probable cause or any other particularized justification, such as a reasonable belief that the driver poses a danger—may open the door to a vehicle and lean inside. We conclude they may not.

We begin by examining the Supreme Court's decision in *New York v. Class*, 475 U.S. 106 (1986), which sets out the

principles that control this case. In *Class*, police officers stopped a car for speeding. *Id.* at 107–08. During the stop, an officer opened the door to read the vehicle identification number printed on the doorjamb. *Id.* at 108. When he did not find the VIN there, he decided to search the dashboard, where the VIN for newer cars is located. *Id.* Because the VIN on the dashboard was covered by papers, the officer opened the door and reached inside to move them out of the way; while doing so, he saw a gun hidden under the seat. *Id.*

The Supreme Court held that the officer's conduct did not violate the Fourth Amendment. The Court explained that "a car's interior as a whole is . . . subject to Fourth Amendment protection from unreasonable intrusions by the police." *Class*, 475 U.S. at 114–15. And it had no difficulty in concluding that "the intrusion into that space" by the officer "constituted a 'search.'" *Id.* at 115. Nevertheless, it held that the search was valid because "the governmental interest in highway safety served by obtaining the VIN is of the first order," and the VIN's location on the dashboard is "ordinarily in plain view of someone outside the automobile," so the intrusion involved in searching it is "minimal." *Id.* at 117–18. The Court made clear that the result would have been different had the VIN not been covered by papers: "If the VIN is in the plain view of someone outside the vehicle, there is no justification for governmental intrusion into the passenger compartment to see it." *Id.* at 119.

*Class* establishes that a physical intrusion into the interior of a car constitutes a search. Although the search in *Class* was justified because of the specific need—finding the VIN—and its minimal intrusiveness, neither of those considerations is present here. The government has pointed to no justification for a search. It has not argued that Willmes

had probable cause, nor has it suggested that Willmes had any reason to fear that Ngumezi might be dangerous. *See Michigan v. Long*, 463 U.S. 1032, 1049 (1983) (authorizing a protective search of a vehicle's passenger compartment "when police have a reasonable belief that the suspect poses a danger"). Instead, it relies on the general principle that a driver has a "diminished" expectation of privacy in a vehicle. *Class*, 475 U.S. at 113. That is true, but as the Court made clear in *Class*, a driver retains important privacy interests, *id.* at 112–14, which is why, in most circumstances, "probable cause is necessary to conduct a warrantless search of a vehicle," *United States v. Rodgers*, 656 F.3d 1023, 1024 (9th Cir. 2011).

The government argues that Ngumezi would have had to speak with Willmes one way or another, and therefore opening the door and leaning in was "minimally intrusive" because, as a practical matter, it "did not alter Ngumezi's circumstances—it merely facilitated communication." It analogizes Willmes's action to that of shining a flashlight into a car, which the Supreme Court has held is not a search. *See Texas v. Brown*, 460 U.S. 730, 740 (1983) (plurality opinion). That reasoning is flawed because it ignores that Willmes entered the interior space of the vehicle when he leaned in across the plane of the door. As several recent Supreme Court decisions have confirmed, that physical intrusion is constitutionally significant: "When 'the Government obtains information by physically intruding' on persons, houses, papers, or effects, 'a "search" within the original meaning of the Fourth Amendment' has 'undoubtedly occurred.'" *Florida v. Jardines*, 569 U.S. 1, 5 (2013) (quoting *United States v. Jones*, 565 U.S. 400, 406 n.3 (2012)); *see Jones*, 565 U.S. at 408 n.5 (explaining that a physical intrusion "conjoined with . . . an attempt to find something or to obtain information" constitutes a search).

Although the intrusion here may have been modest, the Supreme Court has never suggested that the magnitude of a physical intrusion is relevant to the Fourth Amendment analysis. *Jones*, for example, involved the attachment of a GPS tracker that was "a small, light object that [did] not interfere in any way with the car's operation," yet the Court still held that the attachment effected a search. 565 U.S. at 424–25 (Alito, J., concurring in the judgment). Nor do we see how courts could administer a test that would require them to distinguish between Willmes leaning into the passenger-side area of Ngumezi's car and, say, an officer crawling into the back of a car to look under the seats. Instead, we apply a bright-line rule that opening a door and entering the interior space of a vehicle constitutes a Fourth Amendment search. *See Class*, 475 U.S. at 115.

The government emphasizes that, under *Pennsylvania v. Mimms*, 434 U.S. 106 (1977) (per curiam), an officer "may as a matter of course order the driver of a lawfully stopped car to exit his vehicle." *Maryland v. Wilson*, 519 U.S. 408, 410 (1997); *see id.* (extending that rule to passengers). In the government's view, opening a door and leaning into a car is less intrusive than ordering a driver to get out of a car, so if the latter is permissible, then the former must be permissible as well. Ordering a driver out of a car is indeed an "intrusion into the driver's personal liberty"—albeit one that the Court in *Mimms* described as a "*de minimis*" intrusion that "hardly rises to the level of a 'petty indignity.'" 434 U.S. at 111 (quoting *Terry v. Ohio*, 392 U.S. 1, 17 (1968)). But even if opening a door and leaning into the car is a lesser intrusion on the driver's liberty, it is a greater intrusion on the driver's privacy interest in the car's interior. Indeed, the Court emphasized in *Mimms* that a driver ordered out of a car "is being asked to expose to view very little more . . . than is already exposed," something that is not true when an officer

enters the vehicle. *Id.* The rule in *Mimms* does not support Willmes's action here.

The government also relies on *United States v. Brown*, 334 F.3d 1161 (D.C. Cir. 2003), and *United States v. Stanfield*, 109 F.3d 976 (4th Cir. 1997), which both upheld the opening of car doors by police during traffic stops. But in both cases, the courts identified particularized reasons for the officers to fear danger. In *Brown*, the court pointed to several factors "support[ing] both the officers' suspicion of criminal activity and their fear of physical harm," including that the officers were responding to a reported shooting, that passengers in the car made furtive movements as the officers approached, and that the car's windows "were darkly tinted, preventing the officers from having a clear view of the car's occupants." 334 F.3d at 1168–69. Similarly, in *Stanfield*, the court described the car as one "with windows so heavily tinted that [the officers] are unable to view the interior of the stopped vehicle," and it characterized the inspection as one "to ascertain whether the driver is armed, whether he has access to weapons, or whether there are other occupants of the vehicle who might pose a danger to the officers." 109 F.3d at 981. And, crucially, in both cases the court emphasized that the inspection was conducted "without breaking the plane of the car's surface." *Brown*, 334 F.3d at 1169; *accord Stanfield*, 109 F.3d at 981. That fact distinguishes the officers' conduct in those cases from the physical entry into the car that occurred here.

Cases in which courts have upheld an entry into a car also have involved some particularized justification. For example, in *United States v. Ryles*, 988 F.2d 13 (5th Cir. 1993), an officer stopped a car for suspected drunk driving, determined that the driver lacked a valid license, and then opened the door and looked in the car to see whether the

passenger, "who would ultimately be driving" the vehicle, was impaired. *Id.* at 15. The court held that the inspection was permissible in those circumstances but expressly rejected the suggestion "that a police officer may in all circumstances constitutionally intrude into the interior of a vehicle simply because he has temporarily lawfully detained the vehicle because of a traffic violation." *Id.* at 16; *see also, e.g.*, *United States v. Meredith*, 480 F.3d 366, 367 (5th Cir. 2007) (upholding opening of door for "minimally necessary visual inspection" of driver who claimed to be unable to exit the vehicle after being ordered to do so); *United States v. Cotton*, 721 F.2d 350, 352 & n.1 (11th Cir. 1983) (officer permissibly opened door to effect arrest when faced with a clear possibility of danger). We are aware of no authority upholding an entry in circumstances similar to this case.

Because the opening of the car door and leaning into the car constituted an unlawful search, we must consider what remedy is appropriate. The exclusionary rule generally applied in Fourth Amendment cases requires courts to suppress any evidence obtained as a "'direct result of an illegal search or seizure,'" as well as "'evidence later discovered and found to be derivative of an illegality,' the so-called 'fruit of the poisonous tree.'" *Utah v. Strieff*, 136 S. Ct. 2056, 2061 (2016) (quoting *Segura v. United States*, 468 U.S. 796, 804 (1984)). Here, the evidence sought to be suppressed is the gun that was found under the seat. Officer Willmes did not see the gun while he was leaning into the car; he found it only in the subsequent inventory search, which was conducted because Ngumezi's suspended license required his car to be impounded. Ngumezi contends that the gun is nevertheless the fruit of the unlawful search because if Willmes had not leaned into the car, Ngumezi "might have been less intimidated" and could have directed Willmes to the bill of sale on the windshield, dispelling any suspicion

and ending the encounter before the officers learned of his suspended license. The "fruit of the poisonous tree" doctrine does not require a particularly tight causal chain between the illegal search and the discovery of the evidence sought to be suppressed. *See, e.g.*, *United States v. Johns*, 891 F.2d 243, 245 (9th Cir. 1989). Even so, we have some doubt whether it can accommodate a chain with quite so many speculative links as Ngumezi's. We need not resolve that question, however, because "[t]he government has the burden to show that the evidence is not 'the fruit of the poisonous tree,'" and here the government has made no effort to do so. *United States v. Twilley*, 222 F.3d 1092, 1097 (9th Cir. 2000) (quoting *Johns*, 891 F.2d at 245). Nor has it invoked the closely related "attenuation" doctrine, which would allow it to avoid suppression by showing that "the connection between unconstitutional police conduct and the evidence is remote." *Strieff*, 136 S. Ct. at 2061.

In addition, despite what would seem to be a plausible argument that the gun would have been discovered even without the constitutional violation, the government has not argued that the inevitable-discovery doctrine applies. *See Nix v. Williams*, 467 U.S. 431 (1984). It is the government's burden to show inevitable discovery, so its failure to make the argument prevents us from upholding the denial of the suppression motion on that theory. *See United States v. Ruckes*, 586 F.3d 713, 719 (9th Cir. 2009).

Instead, as the government confirmed at oral argument, it has made only one argument against exclusion—namely, that we should not apply the exclusionary rule because the benefits of deterrence do not outweigh the social costs of suppression. The government emphasizes two points: that Willmes's conduct was not "flagrantly illegal" and that suppression would let a guilty defendant go free. We find

neither persuasive. First, although the flagrancy of the government's conduct is relevant to the attenuation doctrine, *see Strieff*, 136 S. Ct. at 2063, lack of flagrancy is not a freestanding basis for avoiding the application of the exclusionary rule—at least not where, as here, it falls short of establishing that the officer had an "objectively 'reasonable good-faith belief'" in the lawfulness of his conduct, *United States v. Lustig*, 830 F.3d 1075, 1080 (9th Cir. 2016) (quoting *Davis v. United States*, 564 U.S. 229, 238 (2011)). Second, while it is true that applying the exclusionary rule in this case will mean that a guilty defendant goes free, that is true of applying the exclusionary rule in essentially every case. Nothing about this case calls for a remedy other than "[t]he typical remedy for a Fourth Amendment violation," which "is the exclusion of evidence discovered as a result of that violation from criminal proceedings against the defendant." *United States v. Garcia*, 974 F.3d 1071, 1075 (9th Cir. 2020).

We reverse the denial of the suppression motion, vacate Ngumezi's conviction, and remand for further proceedings. *See United States v. Cano*, 934 F.3d 1002, 1010 (9th Cir. 2019).

**REVERSED, VACATED, AND REMANDED**.