**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-2472-22

STATE OF NEW JERSEY,

     Plaintiff-Respondent,

v.

RAHEEM T. WILSON,

     Defendant-Appellant.

_____

Argued August 13, 2024 – Decided October 23, 2024

Before Judges Firko and Bishop-Thompson.

On appeal from the Superior Court of New Jersey, Law Division, Mercer County, Indictment No. 21-09-0728.

Rachel E. Leslie, Assistant Deputy Public Defender, argued the cause for appellant (Jennifer Nicole Sellitti, Public Defender, attorney; Rachel E. Leslie, of counsel and on the brief).

Erin Rein, Special Deputy Attorney General/Acting Assistant Prosecutor, argued the cause for respondent (Theresa Hilton, Acting Mercer County Prosecutor, attorney; Erin Rein, of counsel and on the brief).

PER CURIAM

Defendant Raheem T. Wilson pleaded guilty to second-degree unlawful possession of an assault firearm, N.J.S.A. 2C:39-5(f), and second-degree unlawful possession of a handgun, N.J.S.A. 2C:39-5(b). Pursuant to the plea agreement, in February 2023, the court imposed a five-year sentence with a three-and-one-half year period of parole ineligibility subject to the No Early Release Act, N.J.S.A. 2C:43-7.2. Defendant appeals from the motion judge's denial of his motion to suppress the handgun pursuant to the plain view doctrine. We affirm.

I.

Following defendant's arrest after a motor vehicle stop resulting in the seizure of a handgun, among other weapons, ammunition, and a controlled dangerous substance; a grand jury indicted defendant on two counts of unlawful possession of a firearm, N.J.S.A. 2C:39-5(f) and 2C:39-5(b); possession of a hollow nose bullet, N.J.S.A. 2C:39-3(f)(1); seven counts of possession of an ammunition magazine, N.J.S.A. 2C:39-3(j); possession of a gun during a drug offense, N.J.S.A. 2C:39-4.1; two counts of drug possession, N.J.S.A. 2C:35-10(a) (1); and two counts of possession with intent to distribute, N.J.S.A. 2C:35-5(b)(1) and 2C:35-5(b)(9)(b).

During the two-day suppression hearing, the State presented the testimony of the arresting officer, Trenton Police Department Detective Freddy Jimenez, who was assigned to a "slowdown operation"—a joint operation with the Mercer County Sheriff's Office—"to be a visible deterrent, make motor vehicle stops." Jimenez's police report further described the operation's purpose—to "conduct[] motor vehicle stops of vehicles traveling in the area at a high rate of speed." Jimenez, along with several sheriff's officers and approximately five patrol cars, was assigned to Donnelly Homes, Southern, and New Willow area.

Jimenez testified that at approximately 8:53 p.m. on July 10, 2021, while in an unmarked police car, he observed defendant's car in the area of West Ingham Street without a front license plate, in violation of N.J.S.A 39:4-97 and traveling head-on towards Calhoun Street at a high rate of speed, in violation of N.J.S.A 39:4-88. Additionally, defendant "almost swerved" into Jimenez's lane and struck the police car. Based on the vibration of the police car, Jimenez testified defendant's car was travelling "higher" than twenty-five miles per hour. Jimenez turned the police car around, followed defendant and pulled him over.

Jimenez's body worn camera footage was played at the suppression hearing. Consistent with the video footage, Jimenez testified that he and other officers exited their police cars. Jimenez approached the driver's window as

four officers had already surrounded defendant's car with flashlights out and were looking into the car. Jimenez questioned defendant about his speed and intended destination. As Jimenez viewed the footage on cross-examination, he testified defendant's car windows were rolled down and Officer Sickler[1] stood behind Jimenez by the rear driver's side with his flashlight and hand partially over the rear window and pointed into the car's interior.

After an officer shouted the three-digit code for a gun and "get him out the car," defendant was removed from the car and placed under arrest. Jimenez was unequivocal in his testimony that Mesday initially saw the gun as he was standing by the passenger's side and Mesday's hand did not cross the plane of the open window when he used the flashlight to view the car's interior. Jimenez then went to the right rear side of defendant's car and the officers directed his attention to the rear passenger floor.

Jimenez's testimony supported the video footage which depicted a handgun, the slide portion of a handgun, and the drum magazine on the floor underneath the front passenger seat. Upon seeing the handgun, Jimenez stated: "Nice. The gun was observed plain view right there under the seat." Defendant's

---

[1] The record does not provide a first name for Officer Sickler.

car was subsequently towed, and he was issued summonses for motor vehicle offenses, including careless driving, but was not issued a speeding ticket.

Mercer County Sheriff's Officer Dennis Mesday testified that he was detailed to the slowdown operation. On that evening, he was a passenger in the police car driven by Mercer County Detective Swani Enegron as part of a convoy with the Trenton Police Street Crimes Unit. Upon receiving a radio call to stop a speeding car, Enegron did a "K-turn," turned around, and followed the other police cars. The police cars came to a stop and Mesday exited his car.

On direct examination, Mesday stated that he joined Officer Greiss[2] who was focused on the rear passenger side. Mesday testified that as soon as he looked into the rear passenger window, he noticed a "few inches of a drum magazine on the floorboard" next to a "small little white container" that may have contained a controlled substance. He said that "[he] knew as soon as [he] saw it that it was a drum magazine." Mesday testified that his hand with the flashlight did not crossover into the car before he saw the drum magazine, it was not until after he saw the gun did his hand cross into the car. Mesday showed the gun to Greiss and told the Trenton officers to pull defendant out of the car.

---

[2] The record does not provide a first name for Officer Greiss. Greiss's name is spelled phonetically, "Grice" in the transcripts.

A-2472-22

After defendant was placed in the police car, Mesday pointed out the handgun to Jimenez. On cross-examination, Mesday testified that he did not know whether his flashlight crossed over the open window, but it was a "possibility."

The officers then searched the center console and found an additional fully loaded high-capacity ammunition magazine. Officers also found a suspected controlled dangerous substance in the driver's side door coin pocket and a digital scale and zip-lock style bags in the rear compartment. Based on the discovery in the center console, Jimenez reasonably believed there was another firearm in the car, so the officers conducted a search of the trunk, which revealed an AK-47 assault rifle, additional ammunition and drum magazines and live rounds.

A Mercer County grand jury indicted defendant on two counts of second-degree unlawful possession of a firearm, N.J.S.A. 2C:39-5(f) and 2C:39-5(b); fourth-degree possession of hollow nose bullets, N.J.S.A. 2C:39-3(f)(1); seven counts of fourth-degree possession of a large capacity ammunition magazine, N.J.S.A. 2C:39-3(j); second-degree possession of a gun during a drug offense, N.J.S.A. 2C:39-4.1; two counts of third-degree drug possession, N.J.S.A. 2C:35-10(a)(1); and two counts of third-degree possession with intent to distribute, N.J.S.A. 2C:35-5(b)(1) and 2C:35-5(b)(9)(b).

6

Thereafter, defendant moved to suppress the evidence seized from the warrantless search of his car. The State opposed the motion. Following argument, the motion judge issued an order and written opinion on August 17, 2022, denying defendant's motion to suppress. The judge found the handgun was properly seized under the plain view doctrine. The judge rejected defendant's argument that Sickler while on the driver's side "broke the plane" by extending his flashlight through the partially open rear window to illuminate the floor of the car and conducted a search. The judge explained as seen on the body-cam footage, Mesday and Greiss "peered" through the car window, "spotted the firearm", and did not "break the plane of the car to discover the weapon." The judge reasoned the "[t]he seizure of the firearm under the [p]lain [v]iew [e]xception to the [w]arrant requirement was valid because [Mesday] who discovered the gun did not break the plane of the car."

The motion judge ordered the submission of supplemental briefing regarding the items found in the car's trunk. In a second order and written opinion issued on November 17, 2022, the judge cited primarily to the testimony adduced at the suppression hearing and Jimenez's investigation report. The judge denied defendant's motion to suppress the evidence collected from the

trunk determining "probable cause arose from unforeseeable and spontaneous circumstances."  This appeal followed.

## II.

Defendant presents the following arguments for our consideration:

> BECAUSE THE OFFICERS ILLEGALLY INTRUDED INTO THE VEHICLE TO CONDUCT THEIR WARRANTLESS SEARCH, THE PLAIN VIEW EXCEPTION TO THE WARRANT REQUIREMENT DOES NOT APPLY AND THE EVIDENCE SHOULD HAVE BEEN SUPPRESSED.
>
> 1. OFFICERS CONDUCTED AN ILLEGAL SEARCH WHEN THEY REACHED INSIDE THE CAR IN ORDER TO SEE THE EVIDENCE.
>
> 2. WITHOUT BREACHING THE INTERIOR OF THE CAR TO GET A BETTER LOOK, IT WAS NOT "IMMEDIATELY APPARENT" TO THE OFFICERS THAT THE ITEMS ON THE FLOORBOARD WERE CONTRABAND.

"We review the motion judge's determination of [a] defendant's motion to suppress under a deferential standard."  State v. Miranda, 253 N.J. 461, 474 (2023).  When reviewing a motion judge's denial of a motion to suppress physical evidence, our "scope of review . . . is limited."  State v. Ahmad, 246 N.J. 592, 609 (2021).  We "must uphold the factual findings underlying the motion judge's decision so long as those findings are supported by sufficient

credible evidence in the record." Ibid. (quoting State v. Elders, 192 N.J. 224, 243 (2007)). Factual findings of the motion judge should only be set aside when those findings are "clearly mistaken." State v. Zalcberg, 232 N.J. 335, 344 (2018) (quoting State v. Hubbard, 222 N.J. 249, 262-63 (2015)). Factual findings based on "[v]ideo-recorded evidence is reviewed under the same standard." State v. Hagans, 233 N.J. 30, 38 (2018) (citing State v. S.S., 229 N.J. 360, 381 (2017)). We owe no such deference to a motion judge's legal interpretations, which we review de novo. State v. Hathaway, 222 N.J. 453, 467 (2015).

We are guided by deeply rooted principles. The Fourth Amendment of the United States Constitution and Article I, Paragraph 7 of the New Jersey Constitution guarantees "[t]he right of the people to be secure . . . against unreasonable searches and seizures." U.S. Const. amend. IV; N.J. Const. art. I, ¶ 7. "Warrantless searches are 'permissible only if "justified by one of the few specifically established and well-delineated exceptions to the warrant requirement."'" State v. Robinson, 228 N.J. 529, 544 (2017) (quoting State v. Witt, 223 N.J. 409, 422 (2015)).

Where evidence is seized during a vehicle stop without a warrant, "[t]he State has the burden of proof to demonstrate by a preponderance of the evidence

that the warrantless seizure was valid." State v. Atwood, 232 N.J. 433, 437-38, (2018) (quoting State v. O'Neal, 190 N.J. 601, 611 (2007)). Where the State fails to establish the search falls within one of the exceptions to the warrant requirement, the exclusionary rule requires suppression of the evidence. Id. at 449.

"Plain view is one of the recognized exceptions to the warrant requirement." State v. Johnson, 476 N.J. Super. 1, 20 (App. Div. 2023). Under the plain view exception, a warrantless seizure of evidence is proper where the State proves by a preponderance of the evidence that a police officer is "'lawfully . . . in the area where [they] observed and seized the incriminating item or contraband, and it [is] . . . immediately apparent that the seized item is evidence of a crime.'" State v. Williams, 254 N.J. 8, 45 (2023) (emphasis omitted) (quoting State v. Gonzales, 227 N.J. 77, 101 (2016)).

Here, defendant does not challenge the validity of the traffic stop or the seizure of contraband from the center console, driver's side pocket, rear compartment, and the trunk. Rather, defendant challenges the seizure of the handgun and argues the State failed to prove by a preponderance of the evidence that an "illegal intrusion" into defendant's car did not occur when the officers' flashlight broke the plane of the window. Defendant also argues the court

misapplied the plain view exception to the discovery of the handgun on the rear floor. In arguing both the State's interpretation and the court's finding based on State v. Mandel, 455 N.J. Super. 109 (App. Div. 2018) was misplaced, defendant selectively argues we reached a "consensus" in stating "[w]hen the officer 'pierced the airspace inside the vehicle,' he 'intruded inside a space that, under most circumstances, is protected by a legitimate expectation of privacy'" to support his contention. 455 N.J. Super. at 115 (quoting United States v. Ryles, 988 F.2d 13, 15 (5th Cir. 1993)). Thus, we should consider the officer's purpose in physically intruding into the car to determine whether his conduct was unreasonable. Ibid.

Defendant has misread Mandel, and we are unpersuaded by his arguments. In Mandel, we affirmed the suppression of evidence when we determined the officer's placement of his head inside of the window of the car to better hear the defendant was reasonable. 455 N.J. Super. at 117. After recognizing that other state and federal courts have held that physical intrusions into an automobile constitute a search, this court "assum[ed] without deciding" that the officer conducted a search by placing his head in the car window. Id. at 116. We then determined that the officer's intrusion was "minimal and not unreasonable" because "there was no evidence that the purpose of [the officer] placing his head

in the window was to sniff the vehicle cabin for marijuana" and because the police car recording "corroborated the officer's testimony regarding the need to hear defendant over the traffic noise." Id. at 117.

However, "[a] simple observation into the interior of an automobile by a police officer located outside the automobile is not a 'search' within the meaning of the Fourth Amendment." State v. Reininger, 430 N.J. Super. 517, 534 (App. Div. 2013) (quoting State v. Foley, 218 N.J. Super. 210, 215 (App. Div. 1987)).

Applying those guiding principles, we are satisfied the State established both requirements for the plain view exception to the warrant requirement to seize the handgun from under the front passenger seat. The officers lawfully stopped defendant for a traffic violation and we agree with the motion judge there was ample evidence in the record to support the motion judge's findings of fact that Mesday's "peering" into the rear passenger window did not constitute a search of defendant's car. Contrary to defendant's argument, the record shows neither Sickler nor Mesday broke the plane of the window before Mesday discovered the handgun.

We conclude the officers' discovery of the handgun was reasonable and justified under the plain view doctrine. We are satisfied the judge correctly determined the handgun seized from the rear passenger floor fell within the plain

view exception to a warrantless search, and therefore, the handgun seized from the interior of defendant's car was admissible. State v. Cohen, 254 N.J. 308, 327 (2023). Accordingly, we affirm the denial of defendant's motion to suppress the handgun.

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

A-2472-22